**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAQUEL S. MEJIA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   -against-<br><br><br>TIME WARNER CABLE INC.,<br>        Defendant. | No. 15-cv-6445 |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

RAQUEL S. MEJIA ("Plaintiff), individually and on behalf of all other persons similarly situated, brings this action against Defendant TIME WARNER CABLE INC. ("Defendant") to stop Defendant's practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct.  Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

## INTRODUCTION

1.  Defendant is a large cable network provider. In an effort to solicit potential and former customers, Defendant began making telephone calls, *en masse*, to consumers across the country. On information and belief Defendant purchases "leads" containing consumer's contact information and creates an electronic database from which Defendant makes automated calls. Defendant also engages in the practice of making unsolicited calls to former customers to offer promotional deals in order to "win back" their business.

2.      Defendant conducted (and continues to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones without consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").  Defendant made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited ATDS calling activities to consumers and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

4.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

**PARTIES**

5.      Plaintiff RAQUEL S. MEJIA is a natural person and citizen of San Bernardino, California.

6.      Defendant TIME WARNER CABLE INC. is a corporation organized under the laws of the State of Delaware.  Defendant maintains its principal office at 60 Columbus Circle, New York, New York 10023.  Defendant may be served with process by serving its registered agent, C T Corporation System, 111 Eighth Avenue, 13th Floor, New York, New York 10011.

7.      Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9.      The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.  Furthermore, Defendant's headquarters is located in this District, Defendant has purposefully availed itself of the protections of New York law, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

10.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  Furthermore, the Plaintiff Class consists of at least one hundred members.

## LEGAL BASIS FOR THE CLAIMS

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can

3

be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

12.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

13.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

14.     As of October 16, 2013, unless the recipient has given <u>prior express written consent,</u>[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

4

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

15.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

16.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

### COMMON FACTUAL ALLEGATIONS

17.     Defendant is a large cable network provider. In an effort to solicit potential and

former customers, Defendant began making telephone calls, *en masse*, to consumers across the country. On information and belief Defendant purchases "leads" containing consumer's contact information and creates an electronic database from which Defendant makes automated calls. Defendant also engages in the practice of making unsolicited calls to former customers to offer promotional deals in order to "win back" their business.

18.     Unfortunately, in Defendant's overzealous attempt to market its services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients and knowingly continue to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

19.     Not surprisingly, these practices have led to significant backlash from consumers:[2]

- "If more people would outright boycott companies that do telemarketing, these companies would stop.  Right now they have NOTHING to lose.   If one person in several thousand buys from them, they gain."

- "I am not part of Time Warner and on the do not call list and they have called me 9 times in the past 3 days."

- "I had them call me 23 times in the past 4 hours."

- "I have gotten countless calls from this number and every [] time it is the same it is a hangup call I have called it back and asked to be removed from their calling list only to have my call dropped during one of the many transfers it

---

[2] *See, e.g.*, 800Notes for (800) 892-2253, http://800notes.com/Phone.aspx/1-800-892-2253.

takes to attempt speaking to a representive please lose my number and stop
calling me all hours of the day and night!"

- "I terminated my T-W service, and already had this number blocked to stop
their annoying calls when I was a customer. Last light they called several times,
the last at 12:16 am. That is inexcusable."

## FACTS SPECIFIC TO PLAINTIFF RAQUEL MEJIA

20.    Beginning around May of 2015, Plaintiff began to receive calls from the number
800-892-2253, which is associated with Defendant.  At the time Plaintiff filed this lawsuit, Plaintiff
had received at least 2 unsolicited sales calls per day from Defendant.  Plaintiff has not had a
business relationship with Defendant since 2007.

21.    Plaintiff received all calls described above on her cellular telephone assigned a
number ending in 2778.

22.    Defendant and/or third parties on Defendant's behalf, placed all the calls described
above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff's prior
express written consent.

23.    Plaintiff was able to answer several of these calls and interact with the caller's
dialing system and live representatives.

24.    When Plaintiff answered the calls, she could either hear static or the sound of
multiple conversations ("call center noise") on the other end of the line before Defendant's live
representative engaged on the other end of the line.

25.    Plaintiff sometimes had to say "hello?" several times before anyone greeted her on
the other end of the line.  Often, they never greeted Plaintiff, and she could only hear call center

noise.  Clearly, the call center rep was not paying attention or was not at his or her station when Defendant's ATDS routed the call.

26.     When Defendant's representatives did field ATDS call, Defendant's representatives asked for Plaintiff by name and engaged in a scripted sales pitch designed to convince Plaintiff to re-enroll as a customer under the promise to provide her promotional rates.

27.     Plaintiff never provided Defendant consent to call her for marketing purposes.

28.     Plaintiff always told Defendant she wasn't interested in its products, and requested Defendant stop calling her.

29.     Despite this reasonable request, Plaintiff continued to receive calls at a rate Plaintiff felt amounted to harassment.

30.     At the time of the calls, Plaintiff did not have a business relationship with Defendant.

31.     Plaintiff felt the calls were an invasion of her privacy and wanted Defendant to stop calling.  Defendant ignored Plaintiff's request to further its own agenda: re-enroll as many customers as possible, even if it is clear the calls are unwanted.

32.     It was obvious to Plaintiff that Defendant was engaged in a marketing campaign wherein Defendant contact a large number of consumers using an autodialer.

33.     Based on the circumstances of the calls – including but not limited to the multiple calls over a short period of time, Plaintiff was not immediately engaged by a live person ("hello…hello…hello?"), and Defendant called despite Plaintiff's requests to Defendant to stop calling (indicating a computer automatically dialed the number again) – Plaintiff believed Defendant called her cellular telephone using an ATDS that automatically selected her number from a computer database.

34. On information and belief, Defendant's ATDS called Plaintiff on every occasion.

35. Plaintiff understood the purpose of Defendant's calls was to solicit business from Plaintiff.

36. The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

37. Plaintiff is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 2778.

38. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

39. Plaintiff did not provide Defendant with prior express written consent to receive calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

40. All calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1).

41. Plaintiff has reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services.

42. Plaintiff's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

43. In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

9

44.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**A.     CLASS ALLEGATIONS**

45.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the following class defined as follows (the "Class"):

> All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

46.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

47.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

48.     Plaintiff reserves the right to expand the Class definition to seek recovery on behalf

of additional persons as warranted as facts are learned in further investigation and discovery.

49.     Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and the Class members.

**B.     NUMEROSITY**

50.     The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

51.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendant's records.

**C.     COMMONALITY AND PREDOMINANCE**

52.     There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

53.     Common questions for the Class include, but are not necessarily limited to the following:

        a.     Whether Defendant's conduct violated the TCPA;

        b.     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after October 16, 2013;

        c.     Whether members of the Class are entitled to treble damages based on the willfulness of Defendant' conduct;

11

d.      Whether Defendant systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

e.      Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

## D.    TYPICALITY

54.    Plaintiff's claims are typical of the claims of the other members of the Class.

55.    Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

## E.    ADEQUATE REPRESENTATION

56.    Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

57.    Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

## F.    POLICIES GENERALLY APPLICABLE TO THE CLASS

58.    This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

59.    Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

G.    SUPERIORITY

60.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

61.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

62.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

63.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

64.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TCPA, 47 U.S.C. § 227**
**("Robocall Claim" On behalf of Plaintiff and the Class)**

65.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

66.     Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Plaintiff Class Members.

67.     Defendant made the calls without prior express written consent of the Plaintiff and Plaintiff Class Members.

68.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

69.     As a result of Defendant's violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff and the Plaintiff Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

70.     Because Defendant had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members.

71.     Plaintiff and the Plaintiff Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

72.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

73.     Plaintiff is entitled to recover reasonable attorney fees and requests the attorneys' fees be awarded.

## JURY DEMAND

74.     Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a.     An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing her counsel HUGHES ELLZEY, LLP as lead Class Counsel;

b.     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.     An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.     Pre-judgment and post-judgment interest on monetary relief;

f.     An award of reasonable attorneys' fees and court costs; and

g.     All other and further relief as the Court deems necessary, just, and proper.

Dated:  August 14, 2015.

Respectfully Submitted,


_____/s/ Aaron Siri_____

Aaron Siri
SIRI & GLIMSTAD LLP
136 Madison Avenue
5th Floor
New York, NY 10016
Phone: (212) 532-1091
Fax: (646) 417-5967

W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*(Pro Hac Vice admission will be requested)*

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**