UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAQUEL S. MEJIA,<br>individually and on behalf of<br>all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TIME WARNER CABLE INC.,<br><br>　　　　　　Defendant. | 15 Civ. 6445 (JPO)(JLC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF DEFENDANT TIME WARNER CABLE INC. TO STAY PROCEEDINGS**

## TABLE OF CONTENTS

Page

BACKGROUND ......................................................................................................................1

ARGUMENT ..........................................................................................................................4

I.      The Hobbs Act May Prevent Review Of Legal Issues That Are Central To This Case At This Time ..................................................................................................4

II.     Deference To The Pending Appeal In The District Of Columbia Circuit Serves Judicial Economy ..................................................................................................6

CONCLUSION .......................................................................................................................8

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*ACA International v. FCC*,
   No. 15-1211 (D.C. Cir.) ...................................................................................1, 2, 3, 4, 6, 7, 8

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,
   606 F.3d 443 (7th Cir. 2010) ........................................................................................5, 6

*Chamber of Commerce of the United States of America v. FCC*,
   No. 15-1306 (D.C. Cir.) .................................................................................................1, 2

*FCC v. ITT World Commc'ns, Inc.*,
   466 U.S. 463 (1984) .............................................................................................................4

*Gensel v. Performant Technologies, Inc.*,
   No. 13–C–1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015) ...................................7

*Higgenbotham v. Diversified Consultants, Inc.*,
   No. 13–2624–JTM, 2014 WL 1930885 (D. Kan. May 14, 2014) ................................7

*Higginbotham v. Hollins*,
   No. 14–cv–2087–JTM–TJJ, 2014 WL 2865730 (D. Kan. June 24, 2014) ................7

*King v. Time Warner Cable*,
   No. 15-2474 (2d Cir., appeal docketed Aug. 6, 2015) ..................................................7

*Lambert v. Buth-Na-Bodhaige, Inc.*,
   No. 2:14–cv–00514–MCE–KJN, 2014 WL 4187250 (E.D. Cal. Aug. 20,
   2014) ......................................................................................................................................7

*Leyse v. Clear Channel Broad., Inc.*,
   545 F. App'x 444 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 57 (2014) .......................5

*Lindsey v. Normet*,
   405 U.S. 56 (1972) ...............................................................................................................8

*Mais v. Gulf Coast Collection Bureau, Inc.*,
   768 F.3d 1110 (11th Cir. 2014) ....................................................................................5, 6

*Nack v. Walburg*,
   715 F.3d 680 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 1539 (2014) ......................4, 5

*Nelson v. Adams United States*,
   529 U.S. 460 (2000) .............................................................................................................7

*Nigro v. Mercantile Adjustment Bureau, LLC*,
  769 F.3d 804 (2d Cir. 2014) ..................................................................................................5

*Physicians Healthsource, Inc. v. Purdue Pharma L.P.*,
  No. 3:12-CV-1208 SRU, 2014 WL 518992 (D. Conn. Feb. 3, 2014) ......................................7

*Pickens v. Am. Credit Acceptance, LLC*,
  No. 2:14–00201–KD–N, 2014 WL 4662512 (S.D. Ala. Sept. 19, 2014) .................................7

*Professional Ass'n for Customer Engagement Inc. v. FCC*,
  No. 15-1244 (7th Cir.) .............................................................................................................1

*salesforce.com inc. v. FCC*,
  No. 15-1290 (D.C. Cir.) ...........................................................................................................1

*Self v. Bellsouth Mobility, Inc.*,
  700 F.3d 453 (11th Cir. 2012) .................................................................................................6

*Sirius XM Radio Inc. v. FCC*,
  No. 15-1218 (D.C. Cir.) ......................................................................................................1, 4

*Sw. Bell Tel. v. Ark. Pub. Serv. Comm'n*,
  738 F.2d 901 (8th Cir. 1984), *vacated and remanded on other grounds*, 476
  U.S. 1167 (1986) .....................................................................................................................6

*United States v. Any and All Radio Station Transmission Equip.*,
  207 F.3d 458 (8th Cir. 2000) ...................................................................................................6

*United States v. Dunifer*,
  219 F.3d 1004 (9th Cir. 2000) .............................................................................................5, 6

**STATUTES**

28 U.S.C. § 2341 *et. seq.* ................................................................................................................1

28 U.S.C. § 2342(1) ........................................................................................................................4

28 U.S.C. § 2344 .............................................................................................................................2

47 U.S.C. § 227(a)(1) ......................................................................................................................2

47 U.S.C. § 227(b)(1)(A) ................................................................................................................3

47 U.S.C. § 227(b)(1)(A)(iii) ..........................................................................................................2

## OTHER AUTHORITIES

*Rules and Regulations Implementing the Telephone Consumer Protection Act of
   1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No.
   07-135, FCC 15-72, 2015 WL 4387780 (rel. Jul. 10, 2015)............................................*Passim*

Defendant Time Warner Cable Inc. ("TWC") respectfully moves the Court to hold the above-captioned matter in abeyance and to stay proceedings pending the decision of the United States Court of Appeals for the District of Columbia Circuit in *ACA International v. FCC*, No. 15-1211 (D.C. Cir.). *ACA* is the direct appeal of a recent Order of the Federal Communications Commission ("FCC") interpreting the Telephone Consumer Protection Act ("TCPA"). *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, 2015 WL 4387780, at *1 (rel. Jul. 10, 2015) ("FCC Order").[1] Here, Plaintiff's claims and TWC's defenses turn upon questions of law that are directly at issue in *ACA*. Because the D.C. Circuit may have exclusive jurisdiction over those issues under the Hobbs Act, this Court should stay further proceedings pending disposition of the pending appeal.

**BACKGROUND**

This suit involves a claim for damages under the TCPA. When Congress enacted the TCPA in 1991, it sought to target a particular problem—telemarketing robocalls from machines dialing random or sequential phone numbers. Over time, the FCC has tried to expand the statute's reach well beyond its intended scope, resulting in a nationwide flurry of TCPA cases, many of which are brought as class actions with staggering potential damages. The FCC's expansive interpretations have largely been insulated from judicial review because of a peculiar statute—the Hobbs Act—which many courts have interpreted as stripping district courts hearing TCPA cases of jurisdiction to question the FCC's interpretations of the TCPA. *See* 28 U.S.C.

---

[1] The *ACA* case involves petitions for review from multiple parties, but the cases have been consolidated in all respects, including briefing. *See, e.g., Sirius XM Radio Inc. v. FCC*, No. 15-1218 (D.C. Cir.); *Professional Ass'n for Customer Engagement Inc. v. FCC*, No. 15-1244 (7th Cir.); *salesforce.com inc. v. FCC*, No. 15-1290 (D.C. Cir.); *Chamber of Commerce of the United States of America v. FCC*, No. 15-1306 (D.C. Cir.).

1

§ 2341 *et. seq.* Under that Act, a challenge to an FCC order implementing or interpreting the TCPA generally must be brought directly in the Court of Appeals within 60 days of an order's entry. *See* 28 U.S.C. § 2344.

The TCPA generally prohibits placing a call to a cellular telephone number using an "automatic telephone dialing system" ("ATDS") unless the "called party" has consented to receiving the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Here, Plaintiff alleges that TWC used an ATDS to call her without her consent. *See* Complaint ¶¶ 2, 18, 22, 27, 39, 67, 70 (ECF No. 1). This lawsuit implicates several aspects of the TCPA that have been the source of significant uncertainty and that accordingly were the subject of an array of petitions for declaratory rulings at the FCC.

The recent FCC Order sets forth the agency's rulings on these aspects of the TCPA. For example, the statute defines an ATDS as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and … to dial such numbers." 47 U.S.C. § 227(a)(1). However, the FCC Order concludes that the "capacity" of an ATDS is not limited to its actual, present ability to store, generate, and dial random or sequential numbers, but also includes its ***potential ability*** to do so. FCC Order ¶¶ 16, 19. At least one petitioner in *ACA* has warned that the FCC's overbroad, atextual interpretation of ATDS "could turn even a mass-market smartphone into a covered 'autodialer.'" *See* Petition for Review of the U.S. Chamber of Commerce, *Chamber of Commerce of the United States of America v. FCC*, No. 15-1306 (D.C. Cir.), ECF Doc. No. 1571290 at 3. Likewise, Commissioner Ajit Pai wrote in dissent in the FCC Order that "under the Order's reading of the TCPA, each and every smartphone, tablet, VoIP phone, calling app, texting app—pretty much any calling device or software-enabled feature that's not a 'rotary-dial phone' —is an automatic

telephone dialing system."  Dissenting Statement of Commissioner Ajit Pai, FCC Order, at *82.

Additionally, the statute exempts from liability calls "made with the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A).  However, the FCC Order concludes that the statutory term "called party" means "the subscriber and customary users" of a telephone number rather than the "intended" recipient of a call.  FCC Order ¶ 74.  This interpretation could arguably impose liability for calls directed to an individual who provided a phone number and consented to be called on that number, if the actual subscriber or customary user of the number did not consent.  *See* Dissenting Statement of Commissioner Ajit Pai, FCC Order, at *84-85 (arguing that the statutory term "called party" refers to the ***expected*** recipient of a call, and that the FCC Order's contrary interpretation would improperly impose liability for calls to wrong numbers).  For example, Petitioners in *ACA* caution that the FCC's interpretation could potentially impose "liability for calls made to numbers that, without the caller's knowledge, have been reassigned from a person who previously gave express consent … despite the fact that there is no practical way to verify the continued accuracy of numbers before a call is placed."  Petition for Review of the U.S. Chamber of Commerce at 2-3.[2]  Likewise, although the statute does not limit companies from requiring their customers to use a specific process to revoke consent (so that consents can be tracked in an orderly and manageable way), the FCC Order purports to bar such requirements and instead concludes that individuals may revoke consent "using any reasonable method including orally or in writing."  FCC Order ¶ 64.  And, although the statute does not require prior express consent to be in writing, in the FCC Order the agency reasserts its view that if the call in question includes an "advertisement" or constitutes "telemarketing," consent must be given in writing.  *See* FCC Order ¶¶ 4, 9.

---

[2] The FCC Order purports to allow a caller one liability-free call attempt before imposing strict liability for further calls to a number that has been reassigned. *See* FCC Order ¶¶ 85-97.

All of these legal issues may arise in this case.  TWC filed its Answer in the present suit on October 20, 2015, denying that it used an ATDS to call Plaintiff.  Answer ¶¶ 2, 3, 22, 25, 26, 33, 34, 49, 66 (ECF No. 22).  The telephone system that Plaintiff alleges was used to call her is not an ATDS within the meaning of the statute, because that system does not actually store, produce, or call randomly or sequentially generated telephone numbers.[3]  This precise issue is currently being addressed in the *ACA* proceeding.  *See, e.g.,* Statement of Issues of Sirius XM, *Sirius XM Radio Inc. v. FCC*, No. 15-1218 (D.C. Cir.), ECF Doc. No. 1568293 at 3.  Additionally, while Plaintiff attempts to establish her *prima facie* case by claiming that she was "called" without her prior express consent, TWC contends that Plaintiff is not the relevant "called party"—the intended recipient of any calls—and may defend on the grounds that any consent TWC had acquired to contact the intended recipient was not properly revoked, and that any such prior express consent need not have been in writing.  *See* Complaint ¶¶ 2, 18, 22, 27, 39, 67, 70; Answer ¶¶ 2, 18, 22, 27, 39, 67, 70; *id*. at 27.  These issues also are presently pending in the *ACA* proceeding.  *See, e.g.,* Statement of Issues of Sirius XM at 4.

## ARGUMENT

**I.     THE HOBBS ACT MAY PREVENT REVIEW OF LEGAL ISSUES THAT ARE CENTRAL TO THIS CASE AT THIS TIME**

This case should be stayed because it involves legal issues over which the D.C. Circuit may have exclusive jurisdiction.  The Hobbs Act provides that the Court of Appeals assigned to review a final order of the FCC "has **exclusive** jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such agency action.  28 U.S.C. § 2342(1) (emphasis added).  The Act generally precludes courts from entertaining challenges to FCC orders other than on direct review of those orders.  *See, e.g.*, *FCC v. ITT World Commc'ns, Inc.*, 466 U.S.

---

[3] To be clear, TWC contends that it did not use an ATDS under any definition of that term.

4

463, 468 (1984); *Nack v. Walburg*, 715 F.3d 680, 682 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 1539 (2014). Courts have repeatedly held that the Hobbs Act's jurisdictional provision creates a "specific procedural path" to seek direct judicial review of agency action that litigants and other courts may not circumvent. *See, e.g.*, *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010).

Multiple appellate courts have held that the Hobbs Act prevents any court other than the Court of Appeals directly reviewing an FCC order from collaterally reviewing an issue decided in such order, even when the issue arises in a suit between private parties.[4] "To hold otherwise merely because the issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act." *Nack*, 715 F.3d at 686. "Such an end run could result in a judicial determination of a regulation's invalidity without participation by the agency and upon a record not developed by the agency." *Id.* Although the impact of the Hobbs Act on TCPA cases is an open issue in this Circuit, the Second Circuit has explicitly noted the issue. *See Nigro v. Mercantile Adjustment Bureau, LLC*, 769 F.3d 804, 806 n.2 (2d Cir. 2014) (citing *CE Design* for the proposition that the Hobbs Act "limits [a court's] jurisdiction to review" the FCC's interpretation of the TCPA, but declining to apply the rule because "neither party actually challenges the FCC's interpretation of the TCPA").

---

[4] *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) ("That CE Design's challenge to the FCC's EBR defense arises in a dispute between private parties makes no difference—the Hobbs Act's jurisdictional limitations are equally applicable whether [a party] wants to challenge the rule directly … or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit." (citations omitted)); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120-21 (11th Cir. 2014) (same); *United States v. Dunifer*, 219 F.3d 1004, 1006–07 (9th Cir. 2000) (noting that the Hobbs Act's jurisdictional bar applies to affirmative defenses); *Nack*, 715 F.3d at 682; *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 458 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 57 (2014) ("[T]he district court did not have jurisdiction to consider Leyse's arguments that the FCC's exemption decision should be set aside because of procedural infirmities. His collateral attack on the procedural validity of the FCC's decision does not fall within [an] exception to the Hobbs Act.").

This principle has been held to apply even if the private action is not a direct challenge to the FCC order or regulation, as long as it would have the "practical effect" of involving the court in "a determination of [the order's] validity." *Sw. Bell Tel. v. Ark. Pub. Serv. Comm'n*, 738 F.2d 901, 906 (8th Cir. 1984), *vacated and remanded on other grounds*, 476 U.S. 1167 (1986). While TWC disagrees with the prevailing interpretation of the law in this area, and in the absence of controlling Second Circuit authority likely would take the view in this case that the Hobbs Act should not preclude this Court from interpreting the TCPA in a manner inconsistent with the FCC's orders, multiple courts have held that if a party's private claims or defenses "necessarily depend" on "establishing that at least parts of [an FCC] … Order are wrong as a matter of law or are otherwise invalid," the Hobbs Act bars those claims or defenses. *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453, 462 (11th Cir. 2012); *see also Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119-20 (11th Cir. 2014) ("'[A] defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike.'") (quoting *United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000)); *United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000) ("By its terms, the Communications Act's jurisdictional limitations apply as much as to affirmative defenses as to offensive claims."). Thus, the Hobbs Act could preclude this Court from considering the validity of the FCC's interpretation of "automatic telephone dialing system," "called party," and "prior express consent" under the TCPA, preventing this Court from meaningfully adjudicating Plaintiff's claims and TWC's defenses until after *ACA* is decided.

**II.    DEFERENCE TO THE PENDING APPEAL IN THE DISTRICT OF COLUMBIA CIRCUIT SERVES JUDICIAL ECONOMY**

As several courts have explained, the Hobbs Act's jurisdictional bar "serves a number of

valid goals: It promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress to enforce the TCPA." *CE Design*, 606 F.3d at 450 (internal quotation marks omitted).  Here, waiting for the D.C. Circuit to rule on the FCC's interpretation of the TCPA will ensure a uniform, national interpretation of these important TCPA issues.  Holding this case in abeyance pending resolution of the *ACA* case also will "conserve judicial resources and minimize the chance of error" because "[t]he resolution of that [case] will have a substantial effect on the disposition of controlling issues in this case." *Physicians Healthsource, Inc. v. Purdue Pharma L.P.*, No. 3:12-CV-1208 SRU, 2014 WL 518992, at *3 (D. Conn. Feb. 3, 2014).[5]  Numerous courts around the country have granted similar stay motions in TCPA cases, awaiting either the end of the FCC proceedings or, more recently, the completion of the D.C. Circuit appeal in *ACA*.  *See, e.g., Gensel v. Performant Technologies, Inc.*, No. 13–C–1196, 2015 WL 6158072, at *2 (E.D. Wis. Oct. 20, 2015) (maintaining stay of TCPA case in deference to ongoing *ACA* appeal) (attached as Exhibit C).[6]

---

[5] A stay is further warranted here because several of the key issues presented in this case—in particular the proper definition of ATDS and "called party"—are pending before the Second Circuit in another case in which TWC is a defendant. *King v. Time Warner Cable*, No. 15-2474 (appeal docketed Aug. 6, 2015).  TWC has also moved to stay that case due to the Hobbs Act issues discussed above, and that motion is currently awaiting decision.  If the Second Circuit declines to stay the case and instead reaches the merits despite the Hobbs Act, that decision could potentially have a significant impact on the applicable law in this case.

[6] *See also Pickens v. Am. Credit Acceptance, LLC*, No. 2:14–00201–KD–N, 2014 WL 4662512, at *2 (S.D. Ala. Sept. 19, 2014) (staying TCPA case in deference to FCC's pending rulings interpreting the statutory terms "called party" and the "capacity" of autodialers); *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 2:14–cv–00514–MCE–KJN, 2014 WL 4187250, at *2-3 (E.D. Cal. Aug. 20, 2014) (staying TCPA case pending FCC rulings interpreting "prior express consent"); *Higginbotham v. Hollins*, No. 14–cv–2087–JTM–TJJ, 2014 WL 2865730, at *1-2 (D. Kan. June 24, 2014) (staying TCPA case pending FCC rulings on TCPA issues); *Higgenbotham v. Diversified Consultants, Inc.*, No. 13–2624–JTM, 2014 WL 1930885, at *3-4 (D. Kan. May 14, 2014) (same).

Accordingly, TWC requests that the Court stay this case pending the outcome of *ACA*. Absent such relief, this Court would be forced to consider issues that the Hobbs Act may reserve to the *ACA* court, or TWC could be forced to forgo its "right to respond on the merits of the case" and raise its defenses, in violation of the "fundamental requisite of due process of law." *Nelson v. Adams United States*, 529 U.S. 460, 466 (2000) (internal quotation marks omitted); *see also Lindsey v. Normet*, 405 U.S. 56, 66 (1972) ("Due process requires that there be an opportunity to present every available defense.").

## CONCLUSION

For the reasons set forth above, Defendant TWC respectfully requests that the Court grant its motion to hold the case in abeyance and to stay proceedings pending the resolution of *ACA*.

Dated: November 3, 2015

Respectfully Submitted,

LATHAM & WATKINS LLP

By  /s/ Peter L. Winik

Peter L. Winik (*pro hac vice*)
Matthew A. Brill (*pro hac vice*)
Andrew D. Prins (*pro hac vice*)
555 Eleventh Street, NW, Suite #1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (212) 637-2201
peter.winik@lw.com
matthew.brill@lw.com
andrew.prins@lw.com

*Attorneys for Defendant Time Warner Cable Inc.*