UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAQUEL S. MEJIA, LEONA HUNTER, and
ANNE MARIE VILLA, on behalf of themselves
and all others similarly situated,

                                    Plaintiffs,                    15-CV-6445 (JPO)

                        -v-

TIME WARNER CABLE INC.,
                                    Defendant.

_____

ALLAN JOHNSON,
                                    Plaintiff,                    15-CV-6518 (JPO)

                        -v-                                        OPINION AND ORDER

TIME WARNER CABLE INC.,
                                    Defendant.

J. PAUL OETKEN, District Judge:

        Raquel Mejia filed the initial complaint in this action (No. 15 Civ. 6445) (the "*Mejia*

action") alleging a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

§ 227, against Defendant Time Warner Cable Inc. ("Time Warner") on August 14, 2015. (Dkt.

No. 1.) An amended complaint was filed on March 28, 2016, removing Mejia and adding as

Plaintiffs Leona Hunter and Anne Marie Villa. (Dkt. No. 45 ("Compl.").)

        There are several motions currently before the Court: a motion to intervene and a motion

to stay filed by Plaintiffs-Intervenors John Fontes, Daymon Byrd, and Gregory Montegna (Dkt.

No. 63); Plaintiffs' motion for partial summary judgment (Dkt. No. 75); Time Warner's motion

for judgment on the pleadings (Dkt. No. 82); and Time Warner's motion for summary judgment

(Dkt. No. 105).

This Opinion and Order also addresses a fifth motion, a motion for judgment on the pleadings filed by Time Warner in *Johnson v. Time Warner Cable Inc.*, No. 15 Civ. 6518 (S.D.N.Y.) (Dkt. No. 52) (the "*Johnson* action"). This motion raises substantially the same issues raised in Time Warner's other motion for judgment on the pleadings.

For the reasons that follow, all of these motions are denied, except for Time Warner's motion for summary judgment, which is granted in part and denied in part.

## I. Background

### A. The TCPA

The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, was passed by Congress in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). The TCPA bans various privacy-invading practices and directs the Federal Communications Commission ("FCC") to prescribe regulations. *Id.* Relevant here, the TCPA prohibits individuals from "mak[ing] any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). The TCPA allows consumers who receive such calls to recover the greater of their actual monetary loss or $500 per violation, and allows for treble damages where a violation is willful or knowing. *Id.* § 227(b)(3).

### B. Factual Background

Time Warner is a national cable network provider. (Compl. ¶ 1.) Plaintiffs in the *Mejia* action allege that Time Warner conducted "wide scale telemarketing campaigns and repeatedly

made unsolicited calls to consumers' telephones without consent" in violation of the TCPA. (*Id.* ¶ 2.) In particular, Plaintiffs allege that Time Warner made one or more unauthorized calls to their cell phones using an ATDS or pre-recorded voice. The individual calls are detailed below. (*Id.*) Plaintiffs also claim that Time Warner failed to maintain adequate do-not-call policies under the TCPA's implementing regulations. (*Id.* ¶ 19.)

Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and four classes of consumers who received calls from Time Warner. (*Id.* ¶ 62.) They seek damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the putative classes. (*Id.* ¶ 64.)

Plaintiffs Hunter and Villa bring their claims on the basis of several dozen phone calls made to them by Time Warner. The following facts, describing these calls, are based on undisputed facts in the parties' Rule 56.1 statements of material facts, unless otherwise noted. (*See* Dkt. No. 138.)

### 1.    Calls to Plaintiff Villa

Plaintiff Villa's claim involves a phone number ending in 5900, which was assigned to her on November 23, 2015, and for which she had an unlimited phone plan. (*Id.* ¶¶ 1, 3, 22.) A Time Warner customer, "A.S.", established an account listing the 5900 number as the primary contact number. (*Id.*) A.S.'s account subsequently became delinquent. (*Id.* ¶ 5.)

As a result of A.S.'s delinquency, Time Warner placed calls to Villa's number in order to collect payments from A.S. (*Id.* ¶¶ 6, 8.) A total of seven calls were made to Villa's number. The first six calls to Villa's number were made two each on November 27, December 2, and December 8 of 2015. (*Id.* ¶ 7.) These calls were made using an "interactive voice response" ("IVR") calling system. (*Id.*) The seventh call to Villa's number was placed by Time Warner's vendor, Meridian, on December 9, 2015. (*Id.* ¶ 15.)

The following table shows the calls made by Time Warner to Villa's number:

| Call Number | Date | Source |
|---|---|---|
| 1 | 11/27/2015 | IVR |
| 2 | 11/27/2015 | IVR |
| 3 | 12/02/2015 | IVR |
| 4 | 12/02/2015 | IVR |
| 5 | 12/08/2015 | IVR |
| 6 | 12/08/2015 | IVR |
| 7 | 12/09/2015 | Meridian |

Time Warner has not called Villa's number since December 9, 2015. (*Id.* ¶¶ 19, 20.) Time Warner claims that it disconnected A.S.'s account on December 24, 2015, and removed Villa's number from its billing system. (*Id.* ¶¶ 28-29.)

### 2. Calls to Plaintiff Hunter

Plaintiff Hunter's claim involves a phone number ending in 1089, which was assigned to her on May 18, 2015, and for which she had an unlimited phone plan. (*Id.* ¶¶ 33, 64.) Before Hunter was assigned this number, it belonged to a Time Warner customer, "A.F." (*Id.* ¶ 31.) A.F.'s account subsequently became delinquent multiple times from around May 2015 to February 2016. (*Id.* ¶ 35.)

Due to several issues relating to A.F.'s service, Time Warner placed calls to Hunter's number. (*Id.* ¶ 36.) A total of forty-four calls were made to Hunter's number. (*Id.* ¶ 37.) The first twenty calls were made between May 28, 2015, and August 18, 2015, using an IVR calling system. (*Id.* ¶¶ 36, 38-48.) On June 15, 2015, Hunter blocked the phone number used by Time Warner's IVR platform using the "Metro Block-It" application, and Time Warner claims that calls fourteen to twenty were blocked by the application. (*Id.* ¶¶ 49-50.) The twenty-first call was placed by Time Warner's vendor, eClerx, on August 22, 2015, and was not blocked. (*Id.* ¶ 51-52.) The twenty-second through thirty-eighth calls were made between August 23, 2015, and February 1, 2016, using an IVR calling system. (*Id.* ¶¶ 36, 54.) Time Warner claims that

calls twenty-four through thirty-eight were also blocked. (*Id.* ¶ 54.) On January 31, 2016, A.F. called Time Warner and confirmed that the 1089 number (Hunter's number) was associated with his account. (*Id.* ¶ 55.) In early February of 2016, A.F. moved out of his old home and established Time Warner service at his new home. (*Id.* ¶ 56.) On February 5, 2016, A.F. again informed Time Warner that the 1089 number was associated with his account. (*Id.* ¶ 58.) The thirty-ninth through forty-fourth calls were made between February 6, 2016, and February 10, 2016. (*Id.* ¶¶ 36, 57.) The thirty-ninth through forty-second calls were placed by Time Warner's external vendors, InfoCision and NobelBiz. (*Id.* ¶¶ 36, 59.) The forty-third and forty-fourth calls were made using Time Warner's IVR system. (*Id.* ¶ 36.)

The following table shows the calls made by Time Warner to Hunter's number:

| Call Number | Date | Source |
|---|---|---|
| 1 | 5/28/2015 | IVR |
| 2 | 5/28/2015 | IVR |
| 3 | 5/28/2015 | IVR |
| 4 | 6/4/2015 | IVR |
| 5 | 6/4/2015 | IVR |
| 6 | 6/4/2015 | IVR |
| 7 | 6/10/2015 | IVR |
| 8 | 6/10/2015 | IVR |
| 9 | 6/10/2015 | IVR |
| 10 | 6/13/2015 | IVR |
| 11 | 6/15/2015 | IVR |
| 12 | 6/15/2015 | IVR |
| 13 | 6/15/2015 | IVR |
| 14 | 6/18/2015 | IVR |
| 15 | 7/28/2015 | IVR |
| 16 | 8/1/2015 | IVR |
| 17 | 8/4/2015 | IVR |
| 18 | 8/7/2015 | IVR |
| 19 | 8/13/2015 | IVR |
| 20 | 8/18/2015 | IVR |
| 21 | 8/22/2015 | eClerx |
| 22 | 8/23/2015 | IVR |
| 23 | 8/24/2015 | IVR |
| 24 | 8/24/2015 | IVR |

| 25 | 8/28/2015 | IVR |
|----|-----------|-----|
| 26 | 10/28/2015 | IVR |
| 27 | 11/7/2015 | IVR |
| 28 | 11/13/2015 | IVR |
| 29 | 11/28/2015 | IVR |
| 30 | 12/2/2015 | IVR |
| 31 | 12/8/2015 | IVR |
| 32 | 12/14/2015 | IVR |
| 33 | 12/28/2015 | IVR |
| 34 | 1/7/2016 | IVR |
| 35 | 1/13/2016 | IVR |
| 36 | 1/28/2016 | IVR |
| 37 | 1/28/2016 | IVR |
| 38 | 2/1/2016 | IVR |
| 39 | 2/6/2016 | InfoCision |
| 40 | 2/8/2016 | InfoCision |
| 41 | 2/9/2016 | InfoCision |
| 42 | 2/9/2016 | NobelBiz |
| 43 | 2/9/2016 | IVR |
| 44 | 2/10/2016 | IVR |

On February 9, 2016, Hunter told Time Warner that it had called the wrong number and asked Time Warner to stop calling. (*Id.* ¶ 61.) Since February 10, 2016, Time Warner has placed no further calls to Hunter's number, and Time Warner claims that on March 21, 2016, it removed Hunter's number from its billing system. (*Id.* ¶ 71.)

### C.     Procedural Background

Given the procedural and substantive complexity of this action and several related actions, a bit of background—some of which was already covered in the Court's previous opinion (Dkt. No. 110)—is essential.

Raquel Mejia filed the initial complaint in the *Mejia* action on August 14, 2015. An amended complaint was filed on March 28, 2016, removing Mejia and adding Plaintiffs Leona Hunter and Anne Marie Villa. (Dkt. No. 1; Dkt. No. 45.) In an Opinion and Order dated December 15, 2016, this Court appointed interim class counsel in the *Mejia* action and denied

Plaintiffs' request for class-wide discovery pending the disposition of the potentially case-dispositive motions. (Dkt. No. 110.)

The *Mejia* action is not the only relevant TCPA action against Time Warner currently pending in this Court. This Court is also presiding over a related case, the *Johnson* action, brought by Plaintiff Allan Johnson against Time Warner alleging violations of the TCPA, stemming from calls made to Johnson's phone by Time Warner using an IVR calling system. *Johnson v. Time Warner Cable Inc.*, No. 15 Civ. 6518 (S.D.N.Y. Aug. 18, 2015) (Dkt. No. 1).

There is yet another TCPA class action pending against Time Warner in the Central District of California, *Fontes v. Time Warner Cable Inc.*, 14 Civ. 02060 (C.D. Cal.) (the "*Fontes* action"). The *Fontes* action is currently stayed, and the plaintiffs in the *Fontes* action seek to intervene here and stay the actions currently pending in this Court. (Dkt. No. 63.) The *Fontes* Plaintiffs also attempted to centralize these actions—along with four additional TCPA actions also pending in the Central District of California (Dkt. No. 26 at 3)—under 28 U.S.C. § 1407, but their motion was denied by the United States Panel on Multidistrict Litigation on October 3, 2016. (Dkt. No. 60; Dkt. No. 61.)

Two appellate actions are also relevant to the current case. First, *King v. Time Warner Cable Inc.*, No. 15-2474 (2d Cir.), is currently pending in the Court of Appeals for the Second Circuit, which held oral argument on January 25, 2017. In *King*, Time Warner is challenging a district court decision holding, *inter alia*, that Time Warner's IVR system is an ATDS under the TCPA. *King v. Time Warner Cable*, 113 F. Supp. 3d 718, 725 (S.D.N.Y. 2015). This holding forms the basis for Plaintiffs' motion for summary judgment in this action. As of the date of this Opinion and Order, the Second Circuit has not issued a decision in *King*.

Second, *ACA International v. FCC*, No. 15-1211 (D.C. Cir.), is currently pending in the Court of Appeals for the District of Columbia Circuit, which held oral argument on October 19,

2016. (Dkt. No. 72 at 11.) In *ACA International*, the court is reviewing a final order of the FCC regarding its interpretation of ATDS under the TCPA. (Dkt. No. 37.) The D.C. Circuit has not issued a decision in *ACA International* as of the date of this Opinion and Order.

This Opinion addresses the five pending motions in three groups. First, the Court addresses the motions for summary judgment filed by Plaintiffs and by Time Warner in the *Mejia* action. Second, the Court addresses the motions for judgment on the pleadings filed by Time Warner in the *Mejia* action and the *Johnson* action. And third, the Court addresses the motion to intervene and stay by the *Fontes* plaintiffs.

## II. Motions for Summary Judgment

There are two motions for summary judgment pending in the *Mejia* action. First, Plaintiffs, relying on the district court decision in *King*, move for partial summary judgment on the issue of whether Time Warner's IVR phone system is an ATDS. (Dkt. No. 76 at 1-2.) Second, Time Warner moves for summary judgment on Plaintiffs' individual claims, arguing that they have various defects meriting summary judgment. (Dkt. No. 113 at 1-2.) The Court addresses these motions in turn.

### A. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all evidence "in the light most favorable to the non-moving party" and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (quoting *Lunds, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

Though a party may move for summary judgment before the completion of full discovery, summary judgment "should be denied 'where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Delphi-Delco Elecs. Sys. v. M/V NEDLLOYD EUROPA*, 324 F. Supp. 2d 403, 417 (S.D.N.Y. 2004) (quoting *Anderson*, 477 U.S. at 250). Where a nonmoving party shows that it cannot present facts essential to its opposition, the court may defer or deny the motion. *See* Fed R. Civ. P. 56(d).

B.    **Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for partial summary judgment, arguing that the ruling by the district court in *King* collaterally estops Time Warner from litigating whether the IVR calling system used to make several of the calls to Plaintiffs is an ATDS under the TCPA. (Dkt. No. 76 at 1.) Time Warner argues that Plaintiffs have failed to show that the IVR system used to call them is identical to the one at issue in *King*, preventing the application of collateral estoppel (also known as issue preclusion). (Dkt. No. 87 at 1.) Time Warner also argues that the Court should exercise

its discretion and decline to find preclusive effect here because its application would be unfair and would not promote judicial economy. (*Id.*)

In *King*, Judge Hellerstein granted partial summary judgment to the plaintiff on the basis that Time Warner's IVR system qualified as an ATDS. *King*, 113 F. Supp. 3d at 725. In making this determination, Judge Hellerstein focused on Time Warner's failure to "identif[y] any human involvement at all in any stage of the customer selection, list compilation, or dialing processes." *Id.* Accordingly, he concluded that the ATDS generation of customer lists was "fully automated from start to finish." *Id.* Judge Hellerstein also cited the FCC's ruling that an ATDS is "any technology with the *capacity* to dial random or sequential numbers." *Id.* (quoting Press Release, Federal Communications Commission, FCC Strengthens Consumer Protections against Unwanted Calls and Texts (June 18, 2015), https://www.fcc.gov/document/fcc-strengthens-consumer-protections-against-unwanted-calls-and-texts). He concluded that "[p]laintiff has alleged, and Defendant has not credibly refuted, that the IVR has the requisite capacity. Whether it *actually* dialed King's number randomly or from a list is irrelevant. The IVR was an ATDS under § 227(a)(1)." *Id.* Time Warner has challenged this portion of Judge Hellerstein's ruling and the issue is currently on appeal in the Second Circuit. *King v. Time Warner Cable Inc.*, No. 15-2474. Argument was held on January 25, 2017; the Second Circuit has not released a decision as of the date of this Opinion and Order.

Collateral estoppel precludes relitigation of issues actually litigated and decided in a prior action, so long as the determination of those issues was essential to the judgment in the prior action. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995). "Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the

issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." *Id.* (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). However, "[t]he Supreme Court has afforded district courts 'broad discretion' in determining whether to deny collateral estoppel," and "'the general rule should be that in cases where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.'" *S.E.C. v. Mattera*, No. 11 Civ. 8323, 2013 WL 6485949, at *7 (S.D.N.Y. Dec. 9, 2013) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

Time Warner disputes the first prong of this analysis: whether the issue raised in this action is *identical* to that raised in *King*. It argues that Plaintiffs have failed to show that "the IVR platform that called King is identical in all material respects to the one that called Hunter and Villa (and, to the extent they seek class-wide relief, the members of the putative class)." (Dkt. No. 87 at 10-11.) Time Warner contends that "IVR" is a "generic term" and "a *label* used to describe a complex system of interconnected servers and software applications that perform a variety of different functions relevant to managing customer call experiences." (*Id.* at 11.)

And indeed, especially in light of the limited discovery in this action, Plaintiffs have not carried their burden to justify summary judgment on this issue at this juncture. In support of their argument that the *King* IVR system is identical to that at issue here, Plaintiffs point primarily to Time Warner's statement in response to Plaintiffs' Request for Admission No. 37: "Time Warner further admitted on numerous occasions that the 'IVR SYSTEM that is at issue in this case was also at issue in' *King*." (Dkt. No. 98 at 3 (quoting Dkt. No. 89, Ex. E at 22-23).) However, in the very statement upon which Plaintiffs rely, Time Warner made clear that it was not admitting that the IVR system was identical: "TWC further objects to this Request on the grounds that it is vague and ambiguous to the extent it uses the phrase 'the *same* IVR SYSTEM,'

which suggests that the IVR SYSTEM is currently identical to the IVR SYSTEM at any point in the past." (Dkt. No. 89, Ex. E at 22.) Indeed, in the very portion of the statement that Plaintiffs quote in their brief, they omit a key qualification made by Time Warner: "TWC states that the *general* IVR SYSTEM that is at issue in this case was also at issue in" *King*. (*Id.* (emphasis added).) Time Warner, contrary to Plaintiffs' claim, has thus not admitted that the IVR at issue here is the same as that at issue in *King*. They merely conceded that it is the same general type of system.

Plaintiffs also point to statements by Time Warner's counsel purporting to concede that the IVR systems are identical. (Dkt. No. 98 at 3 (citing Dkt. No. 76 Ex. 2).) However, as Time Warner makes clear in its counter-statement to Plaintiffs' Rule 56.1 statement: "The statements made during the pretrial conference . . . are taken out of context, and were not testimonial factual assertions that the IVR platform used here is identical in all material respects to the IVR platform used in *King*, or that the IVR platform is a static technology." (Dkt. No. 88 at 4.) Construing such statements in the light most favorable to Time Warner—the non-moving party here—a reasonable jury could conclude that those statements referred to the *general* IVR system and were not admissions that the systems were identical. Accordingly, summary judgment is not warranted.[1]

Further discovery into the IVR system may reveal that there are no relevant differences between the system used here and the system at issue in *King*. If Plaintiffs are able to adduce

---

[1]     Because the Court concludes that Plaintiffs have not carried their burden to prove the elements of collateral estoppel, it need not address Time Warner's argument that it should exercise discretion to not apply collateral estoppel even where its requirements have been satisfied. (Dkt. No. 87 at 5-10.)

evidence to this effect, they may again move for summary judgment on this issue. At this juncture, however, they have not carried their burden.

### C. Time Warner's Motion for Summary Judgment

Time Warner moves for summary judgment on a variety of grounds. First, Time Warner argues that Plaintiffs lack standing due to their failure to establish a cognizable injury in fact. Second, Time Warner argues that some of the calls to Plaintiffs fall within a regulatory safe harbor for calls to re-assigned numbers. Third, Time Warner argues that Plaintiffs cannot carry their burden to show that Time Warner used an ATDS or played an artificial or prerecorded voice in their calls to Plaintiffs. Fourth, Time Warner argues that even if the TCPA does apply, Time Warner had consent to make the calls and made them in good faith, which bars Plaintiffs' claims. Fifth, Time Warner disputes Plaintiffs' claim that Time Warner failed to maintain adequate do-not-call policies. Lastly, Time Warner challenges Plaintiffs' request for injunctive relief. The Court addresses these arguments in turn.

In considering Time Warner's motion for summary judgment, the Court is mindful that Plaintiffs have not yet had the benefit of class discovery, as the Court has stayed such discovery pending resolution of the pending motions. (Dkt. No. 110.) Accordingly, where Plaintiffs can show that the failure of their opposition is the result of their inability to discover essential facts, the Court will decline to grant summary judgment in Time Warner's favor. *See* Fed. R. Civ. P. 56(d); *Delphi-Delco Elec. Sys.*, 324 F. Supp. 2d at 417-18.

### 1. Standing

Time Warner argues that Hunter and Villa lack standing because they are unable to prove injury in fact. (Dkt. No. 113 at 27.) Time Warner argues that Plaintiffs have suffered no financial loss as a result of the calls because they had unlimited phone plans that did not incur costs by the minute. (*Id.*) And Time Warner argues that Plaintiffs have not suffered any non-

financial injuries because they cannot prove harm for each call for which they seek to recover. (*Id.* at 28-29.)

The "irreducible constitutional minimum" of standing in federal court requires: (1) "injury in fact;" (2) that is "fairly traceable" to a defendant's challenged conduct; and (3) that is "likely to be redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 589-90 (1992). To support standing, an injury must be both "concrete and particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S., at 560). A "bare" statutory violation is insufficient to confer constitutional standing absent some "concrete" harm. *Id.* at 1549.

In a recent case, *Leyse v. Lifetime Entertainment Services, LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 WL 659894 (2d Cir. Feb. 15, 2017) (summary order), the Second Circuit held that a plaintiff had standing to assert a claim under the TCPA where the defendant "left a prerecorded voicemail message, to which [plaintiff] later listened, on an answering device in the place where [plaintiff] resided and to which he had legitimate access." *Id.* at *1. The court added that "[i]nsofar as the TCPA protects consumers from certain telephonic contacts, . . . receipt of such an alleged contact in the way described demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Id.* The Second Circuit cited decisions of several sister circuits finding minor, non-financial injuries sufficient to confer standing for a claim under the TCPA. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (receipt of two brief unsolicited robocalls as voicemail messages); *Palm Beach Golf Ctr.–Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251-52 (11th Cir. 2015) (one-minute occupation of fax machine).

Here, Plaintiffs have adequately alleged precisely the sort of injury that the TCPA was designed to target. "The intent of Congress, when it established the TCPA in 1991, was to

14

protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *In re Rules & Regs Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7979-80 (2015) ("2015 FCC Order") (citing S. Rep. No. 102-178, at 2, 4-5 (1991)). Plaintiff Villa testified that Time Warner's calls—at least one of which she answered—were disruptive and invaded her privacy, even causing her to miss important calls. (Dkt. No. 137-1 at 103-104, 144.) Plaintiff Hunter similarly testified that Time Warner's calls—which she also answered—were unwanted, disruptive, diminished her usage and enjoyment of her cellular telephone, and caused her irritation. (Dkt. No. 137-2 at 7; Dkt No. 115-14 at 109, 127.) Based on the Second Circuit's recent decision in *Leyse*, these allegations are sufficient to support standing under the TCPA.[2] *See, e.g.*, *Zani v. Rite Aid Headquarters Corp.*, No. 14 Civ. 9701, 2017 WL 1383969, at *7 (S.D.N.Y. Mar. 30, 2017).

## 2. TCPA Safe Harbor

In a 2015 order, the FCC established a safe harbor from TCPA liability for calls made to reassigned numbers, due to the difficulty for callers in knowing when numbers have been reassigned.[3] *See* 2015 FCC Order at 7999-8000, 8004-09. This safe harbor "giv[es] callers an opportunity to avoid liability for the *first call* to a wireless number *following reassignment*," and presumes constructive knowledge of the reassignment after that point. *Id.* at 8009 (emphasis added).

---

[2]     Because the Court finds that Plaintiffs have adequately alleged a *non-financial* injury in fact sufficient to support standing, it need not address whether calls made to an unlimited phone plan may amount to a *financial* injury sufficient for standing.

[3]     The viability and scope of the FCC safe harbor is on review in *ACA International* before the D.C. Circuit. *See ACA Int'l*, No. 15-1211 (D.C. Cir.). A decision from that court impacting the safe harbor may provide grounds for reconsidering the Court's conclusions here.

Time Warner argues that it is entitled to summary judgment with respect to the first calls made to each of Hunter and Villa, whose phone numbers were reassigned to them after having previously been assigned to Time Warner customers A.F. and A.S. (Dkt. No. 113 at 23.) Plaintiffs do not appear to dispute this application of the safe harbor. (Dkt. No. 139 at 13.) Accordingly, Time Warner is entitled to summary judgment on call one to Villa and call one to Hunter under the FCC's TCPA safe harbor.

Time Warner also argues that the safe harbor entitles it to summary judgment on calls 38 and 39 to Plaintiff Hunter, which were made on February 1, 2016, and February 6, 2016, respectively. (Dkt. No. 113 at 23-24.) This is because those calls were made after Time Warner subscriber A.F. called Time Warner on January 31, 2016, and February 5, 2016, and provided Time Warner with Hunter's number, thereby renewing consent for Time Warner to call that number. (*Id.*) Plaintiffs dispute this contention, arguing that the safe harbor protects a caller from liability only after reassignment, and does not address consent. (Dkt. No. 139 at 13.)

Plaintiffs' interpretation of the safe harbor is the correct one here. The language of the safe harbor is expressly keyed to the fact of reassignment, foreclosing liability only for the "first call . . . following reassignment." 2015 FCC Order at 8009. It neither mentions nor implies that consent functions to renew the safe harbor. Accordingly, summary judgment is denied on this ground as to calls 38 and 39 to Hunter.

### 3. ATDS/Artificial or Prerecorded Voice

Time Warner next argues that Plaintiffs cannot show that the TCPA applies to the calls at issue here because they have not carried their burden of establishing that Time Warner used an ATDS or played an artificial or prerecorded voice on the calls at issue. (Dkt. No. 113 at 8.) *See* 47 U.S.C. § 227(b)(1) ("It shall be unlawful . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . .").

The TCPA defines ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The 2015 FCC Order further clarified that even where a system is not "presently used" as an ATDS, it nonetheless counts as an ATDS so long as it has the potential ability to be used in that manner.[4] 2015 FCC Order at 7971-72. However, the FCC made clear that it was not "address[ing] the exact . . . contours of the 'autodialer' definition or seek[ing] to determine comprehensively each type of equipment that falls within that definition that would be administrable industry-wide." *Id.* at 7974-75 (internal quotation marks omitted). Whether a particular system is an ATDS, and in particular, the role of human intervention in its functioning, "is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination." *Id.* at 7975.

Time Warner argues that none of the calling systems at issue in this case—the IVR platform, the NobelBiz platform, the eClerx platform, the Meridian platform, and the InfoCision platform—has the requisite capacity to be deemed an ATDS. (Dkt. No. 113 at 11-18.)

As to the non-IVR calling systems, Plaintiffs explain that they are "presently unable to provide a rebuttal to [Time Warner]'s summary judgment allegations . . . because of the lack of opportunity for class-wide discovery." (Dkt. No. 139 at 11.) The four non-IVR systems involve a total of six calls—one to Villa and five to Hunter. Three of the systems made one call each,

---

[4] As discussed above, a decision from the D.C. Circuit in *ACA International* modifying this definition risks disrupting the Court's conclusion on this issue. Under the statutory standard applied prior to the FCC Order, courts generally held that a system must have the *present ability* to store or produce numbers to be called using a random or sequential number generator in order to be deemed an ATDS. *See, e.g.*, *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014); *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192-93 (W.D. Wash. 2014).

and the remaining system made three calls. (*See* Dkt. No. 138 ¶¶ 15, 36.) Given that the TCPA provides $500 per violation, 47 U.S.C. § 227(b)(3), Plaintiffs would be entitled to an award of between $500 and $1500 as to each of these phone systems (or three times that, if they can prove that the violations were willful or knowing, *id.*). The systems are, Plaintiffs claim, managed by third parties, in some cases abroad. Accordingly, Plaintiffs have been unable to adequately defend against Time Warner's summary judgment allegations as to these systems relying only on the limited individual discovery the Court has permitted. Summary judgment on this ground is thus denied as to the non-IVR calling systems, that is, as to call seven to Villa and calls twenty-one, thirty-nine, forty, forty-one, and forty-two to Hunter.

As to the IVR platform, Plaintiffs point to enough evidence to justify denying summary judgment to Time Warner on this question, especially in light of the limited discovery taken in this action. Time Warner claims that none of the platform's software can be "readily modified" to enable random or sequential number generation, citing the absence of an "off-the-shelf plug-in" that could be installed. (Dkt. No. 113 at 13.) However, Plaintiffs identify evidence suggesting that the IVR system has the necessary capacity, including a document describing "automated calling" (Dkt. No. 136-2), and expert testimony describing the capacity of the IVR system (Dkt. No. 136 ¶¶ 45-46).

Moreover, as discussed above, a version of Time Warner's IVR system was deemed to be an ATDS by Judge Hellerstein in *King*. 113 F. Supp. 3d at 725. The Court has denied Plaintiffs' motion for partial summary judgment on the basis that they had not adduced sufficient evidence to show that the IVR system at issue in *King* was sufficiently similar to that at issue here. Accordingly, more discovery on the specifics of the IVR system at issue here is called for. Indeed, in connection with their opposition to Time Warner's motion for summary judgment, Plaintiffs submit an affidavit describing the additional categories of discovery that would be

required to assess whether the IVR system is an ATDS. In particular, Plaintiffs seek to depose a Time Warner representative on "(1) the differences, if any, between the IVR platform in this case and the IVR system described in *King* . . . ; (2) whether the IVR platform has the capacity to store telephone numbers to be called as any type of electronic list or database; (3) Defendant's methodology for initiating and invoking the IVR platform to make outgoing calls," and more. (Dkt. No. 137 ¶ 9.)

Plaintiffs have identified genuine issues of fact as to whether the IVR system here is an ATDS under the TCPA, and have further identified categories of discovery that would better allow them to address the issue. *See Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment."). Accordingly, Time Warner's motion for summary judgment on this issue is denied.

And because the Court concludes that each of the phone systems at issue may be an ATDS, Plaintiffs have satisfied a prerequisite for coverage under the TCPA, and it is unnecessary to address Time Warner's argument on whether Plaintiffs have shown that Time Warner used an artificial or prerecorded voice, which is an alternative predicate for TCPA liability.

### 4. Consent and Good Faith

Time Warner next argues that that it is immune from liability because the TCPA does not prohibit calls that the "called party" consents to receive, 47 U.S.C. § 227(b)(1)(A)(iii), and that the relevant "called party" is the *intended* recipient of the call. (Dkt. No. 113 at 24.) *See generally Reyes v. Lincoln Auto. Fin. Servs.*, No. 16-2104-cv, 2017 WL 2675363 (2d Cir. June 22, 2017). Because Time Warner had the prior consent of its customers—the intended recipients

of its calls—to call Villa's and Hunter's numbers, Time Warner argues that it is immune from TCPA liability. (*Id.*)

However, Time Warner acknowledges that this argument is foreclosed by the FCC 2015 Order, which expressly defines "called party" as "the subscriber and customary users" of the phone number at issue, not the intended recipient of the call. FCC 2015 Order at 8001. Time Warner raises this issue here only in order to preserve it in the event that the FCC's interpretation is vacated by the D.C. Circuit in *ACA International*. Accordingly, summary judgment is denied on this issue.

Time Warner also argues that its good faith belief that it had consent should preclude liability. The FCC 2015 Order does not address this issue and it is unclear whether good faith operates as a defense to liability under section 227(b) of the TCPA, though Time Warner has identified two district court cases concluding as much. *See, Danehy v. Time Warner Cable Enters.*, No. 14 Civ. 133, 2015 WL 5534094, at *7 (E.D.N.C. Aug. 6, 2015); *Chyba v. First Fin. Asset Mgmt., Inc.*, No. 12 Civ. 1721, 2014 WL 1744136, at *12 (S.D. Cal. Apr. 30, 2014).

In any event, even assuming the existence of a good faith defense, the only evidence of good faith that Time Warner identifies is that they eventually stopped calling Villa and Hunter. (Dkt. No. 113 at 25.) However, Time Warner stopped calling only after seven calls to Villa and forty-four calls to Hunter. It has not carried its burden of proving good faith beyond genuine dispute over the duration of its calls. Moreover, the post-reassignment safe harbor created by the FCC 2015 Order, and discussed above, presumes that a caller has constructive notice of the reassignment after just a single call, and may, as a result, foreclose a good faith defense beyond the first call. FCC 2015 Order at 8009. Given this legal and factual uncertainty, the Court denies summary judgment as to Time Warner's good faith defense.

### 5.    Do-Not-Call Policies

Time Warner also seeks summary judgment on Plaintiffs' do-not-call list claims.  The TCPA also allows claims for internal do-not-call list violations.  The relevant regulation provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  47 C.F.R. § 64.1200(d).  The regulation goes on to describe the "minimum standards" a caller must satisfy before placing telemarketing calls.  *Id.* § 64.1200(d)(1)-(6).  The term "telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  *Id.* § 64.1200(f)(12).  By the terms of the regulation, non-telemarketing calls do not give rise to liability under this provision.

Here, Plaintiffs have failed to carry their burden to show that calls *to them* made by Time Warner were made for "telemarketing purposes.  *Id.* § 64.1200(d).  The complaint speaks about telemarketing only in general terms.  It alleges that "Defendant conducted (and continues to conduct) wide scale telemarketing campaigns and repeatedly made unsolicited calls to *consumers'* telephones without consent" (Compl. ¶ 2 (emphasis added)), and that "Plaintiffs' *overriding interest* is ensuring Defendant ceases all illegal telemarketing practices" (*id.* ¶ 59 (emphasis added)).  So too in Plaintiffs' motion for partial summary judgment, in which they contend that "Plaintiffs *and the putative class* allege that Time Warner made unsolicited calls to their telephones . . . as part of a wide ranging telemarketing campaign."  (Dkt. No. 76 at 2.) Nowhere do Plaintiffs allege that any of the calls made to them were made for telemarketing purposes.

In their opposition to Time Warner's motion for summary judgment, the only evidence that Plaintiffs point to in support of their allegation that Time Warner's calls were made for telemarketing purposes is Hunter's claim in her deposition that she believed Time Warner was calling her for telemarketing purposes based on her experience with cable companies. (Dkt. No. 139 at 20.) However, in her deposition, Hunter was then asked: "[D]id Time Warner Cable ever, in fact, try to convince you to sign up for services?" (Dkt. No. 115-14 at 127.) She responded: "We didn't get that far in the conversation. But it's a *possibility* if we would have continued talking, they would have tried to convince me." (*Id.* (emphasis added).) This mere possibility that the calls at issue were being made for telemarketing purposes is insufficient to carry Plaintiffs' burden on their do-not-call list claims. Accordingly, Time Warner is entitled to summary judgment on this claim.

Plaintiffs also argue that they lacked sufficient opportunity to conduct discovery into Time Warner's do-not-call list procedures to determine whether they satisfy the required minimum standards. (Dkt. No. 139 at 20.) *See* 47 C.F.R. § 64.1200(d)(1)-(6). However, Plaintiffs *have* had the opportunity to conduct discovery as to the individual Plaintiffs and the calls at issue; their failure to adduce evidence that these calls were made for telemarketing purposes, an essential element of their do-not-call-list claim, renders irrelevant their inability to take discovery on another element of that claim.

### 6.     Injunctive Relief

In the complaint, in addition to seeking damages, Plaintiffs also seek "[p]reliminary and permanent injunctive relief enjoining Defendant . . . from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones without prior express consent, placing calls to the wrong number, and placing calls to members of Defendant's IDNC . . . ." (Compl. at 18.)

Time Warner moves for summary judgment as to Plaintiffs' request for injunctive relief, arguing that because Plaintiffs have an adequate remedy at law, injunctive relief should not be available. (Dkt. No. 113 at 33.) Time Warner further claims that because it has taken adequate precautions to ensure that further calls will not be made to Plaintiffs, the request for injunctive relief is now moot. (*Id.* at 34-35.)

The TCPA expressly provides that a plaintiff may seek either monetary relief, injunctive relief, or both. 47 U.S.C. § 227(b)(3). The TCPA's provision of statutory damages is designed to compensate victims for past infractions, whereas its provision of injunctive relief is designed to protect against future violations. Permitting a plaintiff to seek both forms of relief confirms these dual aims. *See id.* Accordingly, the mere availability of damages should not preclude a plaintiff from also seeking injunctive relief.

Moreover, because Plaintiffs have not yet been able to take discovery into Time Warner's systems and procedures, it would be premature for the Court to determine that Time Warner has adequately foreclosed the possibility of future violations. (Dkt. No. 137 ¶ 25 ("Plaintiffs have not yet had the opportunity to discover relevant information regarding Defendant's claim that Plaintiffs will not be called again in the future . . . .").) Further discovery may reveal that Time Warner *has*, in fact, taken steps to ensure that future violations will not occur, rendering injunctive relief unnecessary, but the Court cannot grant summary judgment concluding so at this juncture.

### III. Motions for Judgment on the Pleadings

Time Warner moves for judgment on the pleadings in both the *Mejia* action and the *Johnson* action. In both actions, Time Warner challenges the constitutionality of Section 227(b)(1)(A)(iii) of the TCPA under the First Amendment to the United States Constitution, arguing that it draws distinctions that are content based and fails strict scrutiny. (Dkt. No. 83.)

The Court certified the constitutional question in each case pursuant to Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403, and the United States has intervened to defend the constitutionality of the TCPA. (Dkt. No. 90; Dkt. No. 146; *Johnson*, Dkt. No. 56; *Johnson*, Dkt. No. 68.)

Time Warner focuses on the Supreme Court's recent decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), to argue that the TCPA is content-based. In *Reed*, the Supreme Court deemed unconstitutional the sign code of the Town of Gilbert, Arizona, which prescribed different regulations for different types of signs on the basis of their content. *Id.* at 2224-25. The Court held that "[g]overnment regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 S. Ct. at 2227. Because the sign code regulations that applied to a particular sign "depend[ed] entirely on the communicative content" of the sign, the Court deemed the sign code to be content based and thus subject to strict scrutiny, which it failed. *Id.*

Following *Reed*, Time Warner focuses on two exceptions in the TCPA to argue that the statute is content based. First, Time Warner argues that Section 227(b)(1)(A)(iii) of the TCPA, which exempts from liability "call[s] made solely to collect a debt owed to or guaranteed by the United States," is content based on its face, because it "define[s] regulated speech by particular subject matter," *Reed*, 135 S. Ct. at 2227. Time Warner further argues that the TCPA's authorization for the FCC to establish additional exemptions exacerbates this problem. *See* 47 U.S.C. § 227(b)(2)(C). Second, Time Warner argues that because recent judicial and FCC decisions have made it clear that Section 227(b)(1) of the TCPA exempts governmental speakers, it contains a speaker-based restriction.

## A.    Standing

As a threshold matter, Time Warner has standing to challenge the constitutionality of the TCPA because invalidation of Section 227(b)(1)(A)(iii) would release it from liability and, as a result, redress its injuries.

Plaintiffs and the Government make several related arguments questioning Time Warner's ability to challenge the statute.  They argue that Time Warner lacks standing to challenge the statute on the basis of exceptions—the debt-collection exemption and the government-speaker exemption—that do not apply to its conduct here.  (Dkt. No. 99 at 6-7; Dkt. No. 147 at 5-8.)  They also argue that because the debt-collection exemption is severable from the statute, finding the exemption unconstitutional would only lead the Court to strike that portion of the statute and not eliminate Time Warner's liability.  (Dkt. No. 99 at 6-7; Dkt. No. 147 at 5-8.)  And they argue that Time Warner has not adequately alleged overbreadth.  (Dkt. No. 147 at 8.)

However, these arguments misapprehend the posture of Time Warner's challenge.  Time Warner is challenging the statute's underinclusiveness—that is, imposing liability for its calls but not for analogous calls placed for the purposes of debt collection.  Put another way, Time Warner is not directly challenging the imposition of liability for its conduct in the first instance—which on its own would certainly be constitutional.  Rather, Time Warner is disputing Congress's ability to penalize its conduct *while at the same time* immunizing others' conduct, solely on the basis of the content of the communications at issue.

This sort of "underbreadth" challenge arising from the statute's failure to maintain content neutrality frustrates the arguments against standing.  *Hill v. Colorado*, 530 U.S. 703, 724 (2000).  Plaintiffs and the Government argue that Time Warner lacks standing to challenge exceptions that do not directly apply to it.  But this argument would suggest that the only viable

plaintiff to challenge such a provision would be one whose calls fall *within* an exception to liability—for it is to them that the exceptions apply (or so the argument goes)—but such a plaintiff would by definition lack a redressable injury, given its exemption from liability, and as a result would lack standing to challenge the provision. This paradox of underbreadth risks effectively "insulat[ing] underinclusive statutes from constitutional challenge." *Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 7-8 (1989) (quoting *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 221 (1987)); *see also Orr v. Orr*, 440 U.S. 268, 272 (1979) ("We have on several occasions considered this inherent problem of challenges to underinclusive statutes, and have not denied a plaintiff standing on this ground." (citations omitted)). Accordingly, Time Warner should not be denied standing to challenge an exemption, the existence of which renders its liability unconstitutional.

So too with the incarnation of this argument in the guise of severability. Severability is a question of remedy, to be addressed once a constitutional violation has been identified. It is not a threshold issue implicating a party's standing to challenge constitutionality in the first instance. *See, e.g.*, *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2318-19 (2016). *But see I.N.S. v. Chadha*, 462 U.S. 919, 931 n.7 (1983) ("In this case we deem it appropriate to address questions of severability first."). To treat severability as an issue of justiciability would risk insulating underinclusive statutes from constitutional challenge, as it would foreclose challenges by parties liable under a rule made unconstitutional by a potentially severable exception. *See Tex. Monthly, Inc.*, 489 U.S. at 7-8. Moreover, the mere application of a content-discriminatory rule may itself amount to a redressable injury, even where the remedy would broaden rather than eliminate liability. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 n.21 (2017).

Plaintiffs and the Government further argue that the Court should address the TCPA only as applied to Time Warner's speech, which is exclusively commercial, and so should be

evaluated under less searching intermediate scrutiny.[5]  (Dkt. No. 99 at 7-11; Dkt. No. 147 at 11-17.)  However, because Time Warner challenges the statute's allegedly content-based line-drawing head-on as rendering *all applications* of the provision unconstitutional, the Court will address the facial challenge to the statute.  *See United States v. Stevens*, 559 U.S. 460, 472-73 (2010).  Moreover, the TCPA does not distinguish between commercial and non-commercial speech, so it would be inapposite to treat it as a regulation of only commercial speech.  *See Moser v. F.C.C.*, 46 F.3d 970, 973 (9th Cir. 1995) ("Because nothing in the [TCPA] requires the Commission to distinguish between commercial and noncommercial speech, we conclude that the statute should be analyzed as a content-neutral time, place, and manner restriction.  It regulates all automated telemarketing calls without regard to whether they are commercial or noncommercial."); *see also Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1269 n.15 (11th Cir. 2005) ("Because the sign code does not regulate commercial speech as such, but rather applies without distinction to signs bearing commercial and noncommercial messages, the *Central Hudson* test has no application here.").  In any event, because the Court concludes below that the provision survives strict scrutiny, it would necessarily also satisfy any less searching standard of review.

**B.     Section 227(b)(1)(A)(iii) Is Content Based**

Moving to the merits of Time Warner's First Amendment challenge, the Court agrees that the debt-collection exception renders Section 227(b)(1)(A)(iii) content based.

Section 227(b)(1)(A)(iii) provides:

---

[5]     This Court, along with other courts to consider the issue, finds no reason to conclude that *Reed* modified the level of scrutiny applied to regulations of commercial speech. *See Matal v. Tam*, 137 S. Ct. 1744, 1763-64 (opinion of Alito, J.); *see generally* Note, *Free Speech Doctrine After* Reed v. Town of Gilbert, 129 Harv. L. Rev. 1981, 1990-92 (2016) (collecting cases).

> "It shall be unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .*"

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

The debt-collection exception was added to the statute in 2015 as part of the Bipartisan Budget Act of 2015. *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (2015) ("Section 227(b) of the [TCPA] is amended . . . in subparagraph (A)(iii), by inserting ', unless such call is made solely to collect a debt owed to or guaranteed by the United States' after 'charged for the call' . . . ."). Prior to the addition of the debt-collection exception, though the Second Circuit never considered the issue, the Ninth Circuit twice considered and upheld the constitutionality of Section 227(b)(1)(A)(iii) as a content-neutral regulation of speech. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014), *aff'd on other grounds*, 136 S. Ct. 663 (2016); *Moser v. FCC*, 46 F.3d 970 (9th Cir. 1995).

No appellate court has considered the constitutionality of Section 227(b)(1)(A)(iii) since the 2015 amendment and the Supreme Court's decision in *Reed*. However, at least two recent district court decisions have addressed the issue, focusing on the debt-collection exemption. *See Holt v. Facebook, Inc.*, No. 16 Civ. 02266, 2017 WL 1100564 (N.D. Cal. Mar. 9, 2017); *Brickman v. Facebook, Inc.*, No. 16 Civ. 00751, 2017 WL 386238 (N.D. Cal. Jan. 27, 2017). Both held that the debt-collection exemption rendered Section 227(b)(1)(A)(iii) content based under *Reed*, and both concluded that the TCPA withstands strict scrutiny. *Holt*, 2017 WL 1100564, at *7-10; *Brickman*, 2017 WL 386238, at *4-9.

The Court agrees with these recent district court opinions in concluding that the debt-collection exception renders Section 227(b)(1)(A)(iii) content based on its face under *Reed*. It is plain that a court would be required to examine the content of the message at issue to determine whether it was made for a purpose other than "to collect a debt owed to or guaranteed by the United States," and thus subject to liability under the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii). This is sufficient under *Reed* to render the provision content based and thus subject to strict scrutiny. *See Reed*, 135 S. Ct. at 2227 ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

Indeed, the Government bypasses this argument, instead contending that the TCPA *as originally enacted* is not content based and that the 2015 amendment adding the debt-collection exception "should not be considered here."[6] (Dkt. No. 147 at 18-19.) However, given the nature of Time Warner's facial challenge, the Court must consider the provision in its entirety, as it currently applies, and cannot simply ignore the problematic exception.

Plaintiffs argue that the provision is nonetheless content neutral, claiming that "[i]n determining content neutrality, the government's purpose is the controlling consideration." (Dkt. No. 99 at 14.) The Supreme Court's decision in *Reed*, however, roundly forecloses this argument. The Court in *Reed* made clear that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 136 S. Ct. at 2228 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). This Court

---

[6]     The *Johnson* plaintiffs argue that the pre-2015 TCPA applies to them given the timing of their calls. (*Johnson*, Dkt. No. 49 at 3.) However, because the Court concludes below that the TCPA as amended satisfies strict scrutiny, it necessarily follows that the pre-amendment version, which does not include the content-based distinction Time Warner identifies, would satisfy any lesser level of scrutiny.

acknowledges that treating facial content discrimination, however narrow or benign, as an automatic trigger for strict scrutiny risks misaligning the level of First Amendment scrutiny with the magnitude of infringement on First Amendment interests—but this is what *Reed* demands. *See id.* at 2234-36 (Breyer, J., concurring in the judgment).

The Court rejects, however, Time Warner's argument that the provision imposes a speaker-based distinction by exempting government speakers from liability. The Supreme Court has held that the "United States and its agencies . . . are not subject to the TCPA's prohibitions because no statute lifts their immunity." *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 672 (2016). But the mere absence of liability for government speakers does not raise a First Amendment problem. First, government speech is exempt from First Amendment scrutiny. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-68 (2009). And second, the absence of TCPA liability for government speakers is only a confirmation of the general principle of sovereign immunity. To find otherwise would force Congress into an untenable Sophie's Choice between sovereign immunity and compliance with the First Amendment by requiring Congress to abrogate sovereign immunity every time it sought to restrict private speech, so as to avoid the restriction's being treated as speaker based. *See Brickman*, 2017 WL 386238, at *8.

Moreover, the Court rejects Time Warner's argument that because the statute authorizes the FCC to craft further exceptions, which may themselves be content based, the statute itself is content based. The delegation of exception-creating authority to the FCC is not content based on its face, and the FCC could exercise this authority in a content-neutral way. *See* 47 U.S.C. § 227(b)(2)(C) ("The [FCC] . . . may . . . exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party . . . ."). The mere fact that the FCC *could* exercise this authority in a manner that runs afoul of the First Amendment does not imply that the grant of authority is itself

unconstitutional.[7] The district court considering this argument in *Brickman* reached the same conclusion. *See Brickman*, 2017 WL 386238, at \*6.

### C. Application of Strict Scrutiny

Because Section 227(b)(1)(A)(iii) imposes a content-based restriction on speech, it must be struck down unless it survives strict scrutiny. Strict scrutiny "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 135 S. Ct. at 2231 (quoting *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Though strict scrutiny is, as its name indicates, strict, the Supreme Court has recently reaffirmed that it is not "strict in theory but fatal in fact." *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1666 (2015) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995)).

### 1. Compelling Government Interest

The TCPA serves a compelling government interest. The TCPA, which was well supported by extensive congressional findings, was enacted "to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991).

"The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Carey v. Brown*, 447 U.S. 455, 471 (1980). In particular, "[o]ne important aspect of residential privacy is protection of the unwilling

---

[7] To the extent that Time Warner seeks to challenge any particular FCC order promulgated under that provision, this Court lacks jurisdiction to consider such a challenge. The Hobbs Act provides that "[t]he Court of Appeals (other than the United State Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communications Commission made reviewable." 28 U.S.C. § 2342(1).

listener." *Frisby v. Schultz*, 487 U.S. 474, 484 (1988). "[I]ndividuals are not required to welcome unwanted speech into their own homes and . . . the government may protect this freedom." *Id.* at 485. It is true, as Time Warner points out, that the relevant precedents arose in the context of residential privacy and do not refer to cell phones. But the Court sees no reason that this compelling interest does not also extend to cell phones. *See Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305-06 (7th Cir. 2017) ("No one can deny the legitimacy of the state's goal: Preventing the phone (at home or in one's pocket) from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious."); *see generally Riley v. California*, 134 S. Ct. 2473, 2494-95 (2014) ("Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886))). Moreover, the federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest in exempting calls made for the purposes of collecting government debts. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 366 (1943); *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9074, 9076-77 (2016) ("While no legislative history exists that lays out the legislative intent, we believe two reasonable interpretations of the [debt-collection exemption] are to: (1) make it easier for owners of debts owed to or guaranteed by the United States and their contractors to make calls to collect the debts; and (2) make it easier for consumers to obtain useful information about debt repayment, which may be conveyed in these calls.").

The two recent cases considering the constitutionality of the TCPA similarly concluded that the TCPA serves a compelling government interest. *Brickman*, 2017 WL 386238, at *6-7; *Holt*, 2017 WL 1100564, at *8.

## 2. Narrow Tailoring

The Court must next determine whether the TCPA is narrowly tailored. As a general matter, the provision at issue "restricts a narrow slice of speech." *Williams-Yulee*, 135 S. Ct. at 1670. It imposes liability only on a party using an autodialer or artificial voice to make calls without the recipient's consent. 47 U.S.C. § 227(b)(1)(A)(iii). It imposes no restrictions on calls not made using an autodialer or artificial voice, and it allows autodialer or artificial voice calls so long as consent has been secured. Congress, in crafting this provision, carefully targeted the calls most directly raising its concerns about invasion of privacy, while also furthering its interest in collecting federal government debts.

Time Warner argues that by excluding calls made for the purpose of collecting government debts, the provision is fatally underinclusive. (Dkt. No. 83 at 18.) However, the Supreme Court has made clear that "the First Amendment imposes no freestanding 'underinclusiveness limitation.'" *Williams-Yulee*, 135 S. Ct. at 1668 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 387 (1992)). At most, an underinclusive law may raise a "red flag" by "rais[ing] 'doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint.'" *Id.* (quoting *Brown v. Entm't Merchants Assn.*, 564 U.S. at 802).

Here, the government debt carve-out is a narrow exception from liability in furtherance of a compelling interest. The TCPA, in this respect, is entirely unlike the sign code in *Reed*, which was full of insufficiently supported exceptions. *See Reed*, 135 S. Ct. 2224-25. Indeed, the statute expressly authorizes the FCC to further "restrict or limit the number and duration of calls made . . . to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(2)(H). And, as the Court in *Brickman* pointed out in finding the provision to be narrowly tailored, "[t]he government debt exception would likewise be limited by the fact that

such calls would only be made to those who owe a debt to the federal government." *Brickman*, 2017 WL 386238, at *8. This narrow exception, and the provision as a whole, are well-designed to further the interests that Congress sought to pursue with the TCPA.

Finally, Time Warner's proposals of "less restrictive alternatives" do not render the provision fatally overinclusive. Time Warner identifies a variety of alternative restrictions, including restrictions on the duration of calls or the times of day they can be made, or mandatory disclosure requirements. (Dkt. No. 83 at 22-23.) However, these alternatives do not fully foreclose the possibility that autodialer or prerecorded voice calls will be made to non-consenting consumers (even if they would keep such calls short, in a narrow window of time, or fully disclosed), and thus may not sufficiently further Congress's compelling interests in privacy, while also ensuring the collection of government debts. Particularly in light of *Reed*'s capacious understanding of content discrimination, this Court is unwilling to let perfect tailoring be the enemy of narrow tailoring. *See Williams-Yulee*, 135 S. Ct at 1671 ("The First Amendment requires that [the provision] be narrowly tailored, not that it be 'perfectly tailored.'" (quoting *Burson v. Freeman*, 504 U.S. 191, 209 (1992) (plurality opinion))).

Accordingly, Section 227(b)(1)(A)(iii) satisfies strict scrutiny and is thus constitutional.

## IV.    Motion to Intervene and Stay

The plaintiffs in the *Fontes* action seek to intervene in the *Mejia* action for the purposes of staying it pending the *Fontes* action, which was first filed. (Dkt. No. 64.)

The *Fontes* plaintiffs argue that they are entitled to both mandatory and permissive intervention. Intervention as a matter of right under Federal Rule of Civil Procedure 24(a) requires a putative intervenor to: "(1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest

is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001). "Failure to meet any one of these four requirements is grounds for denial." *Freydl v. Meringolo*, No. 09 Civ. 7196, 2012 WL 1883349, at *1 (S.D.N.Y. May 22, 2012) (citing *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006)). As for permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B), "a Court, in its discretion, may grant permission to intervene if the movant 'has a claim or defense that shares with the main action a common question of law or fact.'" *Id.* at *2 (quoting Fed. R. Civ. P. 24(b)(1)(B)). "Permissive intervention is appropriate in circumstances in which intervention would not 'unduly delay or prejudice the adjudication of the original parties' rights.'" *Id.* (quoting Fed. R. Civ. P. 24(b)(3)). "Additional relevant factors include: '(1) the nature and extent of the intervenors' interests, (2) the degree to which those interests are adequately represented by other parties, and (3) whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Id.* (quoting *Chevron Corp. v. Donziger*, 11 Civ. 0691, 2011 WL 2150450, at *5 (S.D.N.Y. May 31, 2011)).

Here, intervention is not justified on either mandatory or permissive grounds. At this early stage of litigation, prior to the certification of a class, any interest the *Fontes* plaintiffs claim is too remote to justify intervention. *See Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) ("For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" (quoting *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990))). Moreover, as the MDL Panel made clear in refusing to consolidate the actions, these cases raise different issues, have partially non-overlapping class definitions, and will require different discovery, thereby limiting the extent of the *Fontes* plaintiffs' interest and the commonalities shared by these actions. *See In re Time*

*Warner Cable, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 2016 WL 5846036, at *1 (J.P.M.L. Oct 3, 2016). And to the extent that the *Fontes* plaintiffs *do* have an interest in the action as members of the putative class, class certification would necessarily imply adequate representation. *See* Fed. R. Civ. P. 23(a)(4). If the *Fontes* plaintiffs think otherwise, they may opt out of any class that is eventually certified.

The Court also declines to stay this action in light of the first-filed status of the *Fontes* action. "Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a 'first filed' rule whereby the court which first has possession of the action decides it." *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994). However, "[t]he first-filed rule is not to be applied mechanically, but is intended to aid judicial administration by acting as a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Eternal Asia Supply Chain Mgmt. (USA) Corp. v. EQD Corp.*, No. 12 Civ. 0058, 2012 WL 6186504, at *3 (S.D.N.Y. Dec. 12, 2012) (quoting *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001)).

Given the differences in the actions, the divergent discovery demands, and the current stay in the *Fontes* action, the Court sees little reason to delay progress in this action, which has already been prolonged by the bifurcation of individual and class-wide discovery pending disposition of Time Warner's motion for summary judgment and motion for judgment on the pleadings. As the MDL Panel put it, "[i]n these circumstances, informal cooperation among the relatively few involved attorneys will be sufficient to minimize any potential for duplicative discovery or inconsistent pretrial rulings." *In re Time Warner Cable, Inc.*, 2016 WL 5846036, at *1.

## V.    Conclusion

For the foregoing reasons, it is hereby ORDERED:

In the *Mejia* action, Plaintiffs' motion for summary judgment is DENIED, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART, Defendant's motion for judgment on the pleadings is DENIED, and the *Fontes* plaintiffs' motion to intervene and stay is DENIED;

In the *Johnson* action, Defendant's motion for judgment on the pleadings is DENIED.

Within 21 days of the date of this Opinion and Order, the parties are directed to file a letter with the Court proposing a timeline for further discovery.

The Clerk of Court is directed to close the following motions in 15-CV-6445:  Docket Numbers 63, 75, 82, and 105.  The Clerk is directed to close the motion at Docket Number 52 in 15-CV-6518.

SO ORDERED.

Dated:  August 1, 2017
        New York, New York

J. PAUL OETKEN
United States District Judge