**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAQUEL MEJIA, LEONA HUNTER and ANNE MARIE VILLA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TIME WARNER CABLE INC.,<br><br>Defendant. | 15 Civ. 6445 (JPO) (JLC) |
| ALLAN JOHNSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TIME WARNER CABLE INC.,<br><br>Defendant. | 15 Civ. 6518 (JPO) (JLC) |

**TIME WARNER CABLE INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(b) AND TO STAY**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................2

I.     THE COURT SHOULD CERTIFY FOR INTERLOCUTORY REVIEW ITS
ORDER DENYING TWC'S MOTION FOR JUDGMENT ON THE
PLEADINGS ...............................................................................................2

       A.     The First Amendment Issue Presents a Controlling Question of Law and
Certification Would Materially Advance the Termination of Litigation.................3

       B.     There Is Substantial Ground For Difference of Opinion On This Issue .................4

II.    THE COURT SHOULD STAY THESE CASES................................................9

III.   EVEN IF THE COURT DOES NOT STAY THESE CASES PENDING THE
SECOND CIRCUIT'S INTERLOCUTORY REVIEW AND A DECISION IN
*ACA*, THE COURT SHOULD STAY *JOHNSON* PENDING RESOLUTION OF
*MEJIA* .......................................................................................................12

CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
  860 F. Supp. 128 (S.D.N.Y. 1994) ........................................................12

*A.N.S.W.E.R. Coal. v. Kempthorne*,
  537 F. Supp. 2d 183 (D.D.C. 2008) ........................................................ 6

*Abplanalp v. United Collection Bureau, Inc.*,
  No. 3:15-CV-203-RJC-DCK, 2016 WL 81498 (W.D.N.C. Jan. 7, 2016) ................................ 11

*Ace Property and Cas. Ins. Co. v. Specialty Logging, LLC*,
  No. 1:14-cv-00944-JMC, 2015 WL 1422181 (D.S.C. Mar. 27, 2015) ...................................14

*Alden v. Maine*,
  527 U.S. 706 (1999) ........................................................ 7

*American Ass'n of Political Consultants, Inc. v. Sessions*,
  No. 5:16-CV-252-D, 2017 WL 1025808 (E.D.N.C. Mar. 15, 2017) ........................ 8

*Ark. Writers' Project, Inc. v. Ragland*,
  481 U.S. 221 (1987) ........................................................ 5

*Bell v. City of Winter Park*,
  745 F.3d 1318 (11th Cir. 2014) ........................................................ 7

*Bowden v. Contract Callers, Inc.*,
  No. 16-CV-06171-MMC, 2017 WL 1732017 (N.D. Cal. Apr. 5, 2017).................................. 11

*Brickman v. Facebook, Inc.*,
  No. 16-CV-00751-TEH, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017)........................... passim

*Cahaly v. Larosa*,
  796 F.3d 399 (4th Cir. 2015) ........................................................ 5

*Carey v. Brown*,
  447 U.S. 455 (1980) ........................................................ 4

*Carnivale Bag Co. v. Slide-Rite Mfg. Corp.*,
  No. 74 CIV. 5574, 1975 WL 958 (S.D.N.Y. Oct. 7, 1975)........................................... 3

*Catanese v. Unilever*,
  774 F. Supp. 2d 684 (D.N.J. 2011)........................................................12

*Childs v. Time Warner Cable Enter.*,
Ord. Granting Mot. to Stay, No. 5:15-cv-240 (W.D. Ky. Mar. 16, 2016) .............................. 11

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ...................................................................................................... 4

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) ...................................................................................................... 7

*Coatney v. Synchrony Bank*,
No. 6:16-CV-389-ORL-22TBS, 2016 WL 4506315 (M.D. Fla. Aug. 2, 2016) ...................... 11

*DiMarco v. Nationstar Mortg., LLC*,
No. 16-CV-6588, 2017 WL 1855197 (W.D.N.Y. May 5, 2017) ............................................ 11

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
747 F.3d 145 (2d Cir. 2014) ............................................................................................ 3

*Eternal Asia Supply Chain Mgmt. (USA) Corp. v. EQD Corp.*,
No. 12 Civ. 0058 (JPO), 2012 WL 6186504 (S.D.N.Y. Dec. 12, 2012) ................................. 12

*Flo & Eddie, Inc v. Sirius XM Radio Inc.*,
No. 13 CIV. 5784 CM, 2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ........................... 3, 4, 8, 9

*Flockhart v. Synchrony Bank*,
No. 17-CV-4019-MWB, 2017 WL 3276266 (N.D. Iowa Aug. 1, 2017) ................................. 11

*Frable v. Synchrony Bank*,
215 F. Supp. 3d 818 (D. Minn. 2016) .................................................................................. 11

*Gage v. Cox Commc'ns, Inc.*,
No. 2:16-CV-02708-KJD-GWF, 2017 WL 1536220 (D. Nev. Apr. 27, 2017) ....................... 11

*Holt v. Facebook, Inc.*,
No. 16-CV-02266-JST (N.D. Cal. May 2, 2017) ....................................................... 1, 8, 9, 11

*Jones v. Credit Acceptance Corp.*,
No. 15-13165, 2016 WL 7320919 (E.D. Mich. Oct. 31, 2016), *report and recommendation
adopted by* 2016 WL 7242141 (E.D. Mich. Dec. 15, 2016) ..................................................... 11

*Joseph v. Barclays Bank Delaware*,
No. 1:16-CV-00029-AT-RGV, 2016 WL 8202737 (N.D. Ga. Dec. 12, 2016) ........................ 11

*Kaahumanu v. Hawaii*,
682 F.3d 789 (9th Cir. 2012) .............................................................................................. 7

*Kennoy v. Synchrony Bank*,
No. 3:16-CV-2034, 2017 WL 2215279 (M.D. Pa. May 19, 2017) ......................................... 11

*Kinkead v. Humana, Inc.*,
  No. 3:15-CV-01637(JAM), 2016 WL 9453808, at *3 (D. Conn. Oct. 13, 2016) .................. 3, 9

*Kirkeby v. Furness*,
  92 F.3d 655 (8th Cir. 1996) ....................................................................................... 4

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
  Amministrazione Straordinaria*,
  921 F.2d 21 (2d Cir. 1990) ..................................................................................... 2, 3

*Lambert v. Seminole Cty. Sch. Bd.*,
  6:15-cv-0078-DAB, 2016 U.S. Dist. LEXIS 128339 (M.D. Fla. Jan. 21, 2016) ...................... 7

*Lilly v. Synchrony Fin.*,
  No. 2:16-CV-2687-JCM-VCF, 2017 WL 1370698 (D. Nev. Apr. 7, 2017) ............................ 11

*Oberwetter v. Hilliard*,
  639 F.3d 545 (D.C. Cir. 2011).................................................................................... 6

*Ortiz v. Panera Bread Co.*,
  No. 1:10CV1424, 2011 WL 3353432 (E.D. Va. Aug. 2, 2011)....................................12

*Peterson v. Aaron's, Inc.*,
  No. 1:14-CV-1919-TWT, 2015 WL 224750 (N.D. Ga. Jan. 15, 2015) ....................................13

*Pleasant Grove City v. Summum*,
  555 U.S. 460 (2009) ............................................................................................. 6

*Rajput v. Synchrony Bank*,
  No. 3:15-CV-1595, 2016 WL 6433150 (M.D. Pa. Oct. 31, 2016)........................................... 11

*Readick v. Avis Budget Group, Inc.*,
  No. 12 Civ. 3988(PGG), 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014)................................14

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ......................................................................................... 1, 5

*Reynolds v. Geico Corp.*,
  No. 2:16-CV-01940-SU, 2017 WL 815238 (D. Or. Mar. 1, 2017)........................................... 11

*Ricketts v. Consumers Energy Co.*,
  No. 16-CV-13208, 2017 WL 2351731 (E.D. Mich. May 31, 2017) ........................................ 11

*Rodriguez v. DFS Services, LLC*,
  No. 8:15-cv-2601-T-30TBM, 2016 WL 369052 (M.D. Fla. Feb. 1, 2016) ............................ 11

*Rosales v. Heath*,
  No. 8:17-CV-87, 2017 WL 2533365 (D. Neb. June 9, 2017) .................................................. 11

*Rose v. Wells Fargo Advisors, LLC*,
   No. 1:16-CV-562-CAP, 2016 WL 3369283 (N.D. Ga. June 14, 2016) ................................... 11

*Smith v. Univ. of Wash. Law School*,
   233 F.3d 1188 (9th Cir. 2000) ......................................................................................... 4

*Solantic, LLC v. City of Neptune Beach*,
   410 F.3d 1250 (11th Cir. 2005) ....................................................................................... 6

*Tate-Small v. Saks Inc.*,
   No. 12 CV 1008 (HB), 2012 WL 1957709 (S.D.N.Y. May 31, 2012) .................................... 13

*Williams v. Nationstar Mortg., LLC*,
   No. 6:16-CV-01357-TC, 2016 WL 6905382 (D. Or. Nov. 23, 2016) ..................................... 11

*Williams-Yulee v. Fla. Bar*,
   135 S. Ct. 1656 (2015) ................................................................................................... 5

*Women Strike for Peace v. Morton*,
   472 F.2d 1273 (D.C. Cir. 1972) ....................................................................................... 6

## STATUTES

28 U.S.C. § 1292(b) ......................................................................................... passim

## INTRODUCTION

The portion of the Court's August 1, 2017 order denying TWC's motion for judgment on the pleadings (*Mejia*, ECF No. 154; *Johnson*, ECF No. 77) ("Order") warrants certification for interlocutory review under 28 U.S.C. § 1292(b).  That Order addresses a case-dispositive question of law: whether 47 U.S.C. § 227(b)(1)(A)(iii) may be applied to impose liability on TWC consistent with the First Amendment.  If the Second Circuit finds that TWC is correct that the provision violates the First Amendment, it would resolve what remains of these cases.

This Court correctly recognized that strict scrutiny applies to 47 U.S.C. § 227(b)(1)(A)(iii); under that standard, the provision is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).  The only two other judges to decide similar First Amendment challenges to 47 U.S.C. § 227(b)(1)(A)(iii) likewise applied strict scrutiny. Recognizing the difficulty of the constitutional question, Judge Henderson concluded that, although he found that the provision survives strict scrutiny, "*it is plausible that other courts could have endorsed the opposite result.*"  *Brickman v. Facebook, Inc*., No. 16-CV-00751-TEH, 2017 WL 1508719, at *3-4 (N.D. Cal. Apr. 27, 2017) (emphasis added).  He also observed that "'fair-minded jurists might reach contradictory conclusions'" about this "'highly debatable question[]'" in light of "the high bar that strict scrutiny presents." *Id.* (citations omitted).  Judge Tigar agreed with Judge Henderson and adopted his analysis.  *See* Order Granting Motion to Certify and Staying Case, *Holt v. Facebook, Inc.*, No. 16-CV-02266-JST (N.D. Cal. May 2, 2017), ECF No. 86 at 1.  Both Judges therefore certified their orders for interlocutory review.

Both Judge Henderson and Judge Tigar also stayed further proceedings pending the Ninth Circuit's resolution of the certified orders, recognizing that this approach would "advance the ultimate termination of the litigation" and "'may spare the parties of the burden of a trial'" and other unnecessary proceedings. *Brickman*, 2017 WL 1508719, at *3-4 (citation omitted); *Holt*,

ECF No. 86 at 1 (adopting the same reasoning).  Those judges also recognized that a stay was further warranted in light of the D.C. Circuit's pending *ACA* appeal, which could ultimately "streamline the proceedings and promote judicial economy by simplifying the issues in this case."  *Brickman*, 2017 WL 1508719, at *4; *Holt*, ECF No. 86 at 1 (adopting the same reasoning).

The same result is warranted here.  TWC respectfully requests that the Court certify the First Amendment order for interlocutory review and stay these cases pending the conclusion of such review and the D.C. Circuit's decision of *ACA*.  The United States has stated that it consents to a stay pending the D.C. Circuit's decision in *ACA*, but does not consent to certification of an interlocutory appeal.  Plaintiffs oppose all of the requested relief.

In the alternative, TWC requests that the Court stay *Johnson* pursuant to the first-to-file doctrine and/or its inherent discretion, as the putative class in *Mejia* substantively overlaps with the putative class in *Johnson* and it would be highly inefficient for both cases to proceed into class discovery.  The plaintiff in *Johnson* opposes such a stay.

## ARGUMENT

## I.   THE COURT SHOULD CERTIFY FOR INTERLOCUTORY REVIEW ITS ORDER DENYING TWC'S MOTION FOR JUDGMENT ON THE PLEADINGS

Certifying an order for interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate where (1) "such order involves a controlling question of law," (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation," and (3) "there is substantial ground for difference of opinion" on the question raised.  Here, all of those requirements are met.  In addition, immediate appellate review would guide the disposition of multiple other pending TCPA matters, and save all parties here from potentially unwarranted

2

burdens of discovery and continuing litigation.  Accordingly, the Court should certify the Order

for interlocutory review.

<blockquote>

**A.     The First Amendment Issue Presents a Controlling Question of Law and Certification Would Materially Advance the Termination of Litigation**

</blockquote>

Under Second Circuit precedent, "it is clear that a question of law is 'controlling' if

reversal of the district court's order would terminate the action."  *Klinghoffer v. S.N.C. Achille*

*Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d

21, 24 (2d Cir. 1990) (citations omitted).  That is precisely the circumstance here: reversal of this

Court's ruling upholding 227(b)(1)(A)(iii) under strict scrutiny "would dispose of the entire

case."  *Flo & Eddie, Inc v. Sirius XM Radio Inc.*, No. 13 CIV. 5784 CM, 2015 WL 585641, at *2

(S.D.N.Y. Feb. 10, 2015) (granting certification and staying case during review by the Second

Circuit).

Where a district court ruling implicates a "controlling question of law," the Second

Circuit has recognized that it typically follows that its resolution would "materially advance the

termination of litigation."  *See Klinghoffer*, 921 F.2d at 24; *see also Flo & Eddie, Inc.*, 2015 WL

585641, at *3 (because a successful appeal would mean that "this lawsuit will end," certification

would "materially advance the ultimate termination of the litigation").   Here, because a

successful appeal would immediately terminate this litigation without the need for further

proceedings, there is no doubt that it would materially advance the termination of litigation.

Indeed, resolving these cases based on a dispositive constitutional question would advance the

core purpose under Section 1292(b) of avoiding the burdens of "needless" proceedings that result

in unnecessary expenditure of "time and expense" on trial and other proceedings.  *DPWN*

*Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 150 (2d Cir. 2014).  For decades,

courts in this Circuit have recognized that mass class actions often present precisely the kinds of

burdens that Section 1292(b) sought to mitigate.  For example, in *Carnivale Bag Co. v. Slide-Rite Mfg. Corp.*, this Court recognized that certification was proper on a dispositive question of standing because it could "avoid[]" a "lengthy and complicated … class action with a number of time and expense-consuming stages, including determining the class and carrying out discovery."  No. 74 CIV. 5574, 1975 WL 958, at *2 (S.D.N.Y. Oct. 7, 1975); *see also Kinkead v. Humana, Inc.*, No. 3:15-CV-01637(JAM), 2016 WL 9453808, at *3 (D. Conn. Oct. 13, 2016) (similar).  As discussed further below, those risks are particularly acute here, in light of the different dialing architectures, many millions of calling records, and difficult, individualized questions of consent at issue.  By contrast, if the Second Circuit disagrees with the Court's application of strict scrutiny, these cases will be terminated immediately, avoiding unnecessary, burdensome litigation.

### B.      There Is Substantial Ground For Difference of Opinion On This Issue

There is "substantial ground for difference of opinion" on the First Amendment issue because it presents multiple novel "legal question[s] about which reasonable minds can differ." *Flo & Eddie, Inc.*, 2015 WL 585641, at *2.

First, this Court correctly recognized that strict scrutiny applies here because of the exemption of private debt collection calls relating to private, government-guaranteed debts, and government-owed debts.  That is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), and is in itself a sufficient reason to find "substantial ground for difference of opinion," 28 U.S.C. § 1292(b).  *Cf. Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1192 (9th Cir. 2000) (noting "substantial ground for difference of opinion" on question of whether "educational diversity is a compelling governmental interest that meets the requirement of 'strict scrutiny' for race-conscious" college admissions, notwithstanding potentially controlling *Bakke* decision).

4

TWC respectfully submits that reasonable jurists could come to differing conclusions about the Court's specific application of strict scrutiny here.  For example, reasonable jurists could disagree as to whether an interest in mobile telephone privacy or revenue collection in this particular factual context is sufficiently compelling to justify a content-based speech restriction. *See Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) (noting that "the Supreme Court has never held that [privacy] is a compelling interest" justifying content based restrictions on speech); *Carey v. Brown*, 447 U.S. 455, 465, 470 (1980) (privacy interest was not sufficiently compelling to justify content based restriction on highly intrusive *residential picketing*, and also observing that the government "may protect individual *privacy* by enacting … regulations applicable to all speech *irrespective of content*" (emphases added)); *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 23–232 (1987) ("interest in raising revenue" was not sufficiently compelling to justify "selective imposition of the sales tax on some magazines and not others, based solely on their content").  Likewise, reasonable jurists could disagree as to whether the statute is narrowly tailored, because Congress itself recognized that the debt collection calls that Section 227(b)(1)(A)(iii) exempts raise *equally or more pervasive privacy concerns* than the restricted calls (including those expressing core political speech).  *Compare Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1666 (2015) (restriction on direct judicial fundraising was narrowly tailored, because the exempt speech (*i.e.,* indirect campaign committee fundraising) posed a "*categorically different and [less] severe risk*" of harm than the restricted speech (emphasis added)), *with Reed*, 135 S. Ct. at 2231 ("The Town cannot claim that placing strict limits on temporary directional signs is necessary to beautify the Town while … allowing … other types of *signs that create the same problem*." (emphasis added)).  Indeed, the only appellate court to review a similarly content-based restriction on autodialed calls invalidated that statute under

strict scrutiny.  *See Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015).  *Cahaly* also indicates that Courts could reasonably disagree as to whether effective, less-restrictive alternatives to autodialer restrictions are available.  *Id.* ("Plausible less restrictive alternatives include time-of-day limitations, mandatory disclosure of the caller's identity, or do-not-call lists.").

Second, reasonable jurists could disagree with this Court's conclusions that Section 227(b)(1)(A)(iii)'s exemption for government messages does not trigger strict scrutiny because "government speech is exempt from First Amendment scrutiny" and this exemption "is only a confirmation of the general principle of sovereign immunity" (Order at 30).  The Eleventh Circuit held in *Solantic* that the government may not prefer its own speech over private speech, unless such discrimination can satisfy strict scrutiny.  *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1265–66 (11th Cir. 2005).  The D.C. Circuit applied that same antidiscrimination principal to the National Park Service in *Women Strike for Peace v. Morton*, in spite of the federal government's sovereign immunity.  472 F.2d 1273, 1292–93 (D.C. Cir. 1972) (finding that  National Park Service could not use a permitting scheme to restrict private speakers on the Ellipse, while exempting the National Park Service and organizations it chose to co-sponsor, because that "preference" for "the official voice" and for "[g]overnment sponsored displays" was "patently inconsistent with the Constitution" and "constitute[d] … the kind of blatant government censorship which the framers of the First Amendment intended to outlaw forever"); *see also A.N.S.W.E.R. Coal. v. Kempthorne*, 537 F. Supp. 2d 183, 196–97, 205 (D.D.C. 2008) (holding that the National Park Service must "subject itself to the same permitting regulations as other applica[nts]" and may not privilege "[g]overnment-sponsored displays" or agencies, in spite of its sovereign immunity).  The Second Circuit may well follow *Solantic*, *Women Strike for Peace*, and cases like them, as those cases do not require that the government waive its sovereign immunity or restrict its own speech in order to impose a speech

6

restriction.[1]   And reasonable jurists also could find that sovereign immunity cannot justify the speaker-based restriction because Section 227(b)(1)(A)(iii) exempts messages from even government entities that do not have sovereign immunity, including counties and municipalities.  *See Lambert v. Seminole Cty. Sch. Bd.*, 6:15-cv-0078-DAB, 2016 U.S. Dist. LEXIS 128339, at *6 (M.D. Fla. Jan. 21, 2016) ("the plain meaning of the TCPA's liability provision excludes governmental entities," including school boards); *Alden v. Maine*, 527 U.S. 706, 756 (1999) (sovereign immunity "does not extend to … a municipal corporation or other governmental entity which is not an arm of the State").

Third, reasonable jurists could find that the TCPA's authorization for the FCC to redefine the speech restriction in Section 227(b)(1)(A)(iii) to include additional, cumulative content-based exemptions also must be justified under strict scrutiny.  *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56 (1988) (holding an official or agency may not maintain "unbridled discretion … over whether to permit or deny expressive activity"); *Kaahumanu v. Hawaii*, 682 F.3d 789, 807 (9th Cir. 2012) (agency charged with administering speech restriction

_____

[1] The government has multiple options available to eliminate this discrimination in favor of government messages, without waiving its sovereign immunity—for example, by (i) privileging government messages only when that preference is narrowly tailored to a compelling interest—as with a host of public safety applications, among others; (ii) imposing a uniform restriction on all autodialed and prerecorded messages, *without granting a private right of action* for damages or injunctive relief against the government; or (iii) eliminating the restrictions that, today, uniquely target disfavored, private messages. *See A.N.S.W.E.R. Coal.*, 537 F. Supp. 2d at 196–97; *Women Strike for Peace*, 472 F.2d at 1293.  Of course, the Court was right to observe (Order at 30) that "government speech" is often treated differently under the First Amendment, since when the government speaks, "[i]t is entitled to say what it wishes." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467–68 (2009); *see also Oberwetter v. Hilliard*, 639 F.3d 545, 554 (D.C. Cir. 2011) (in a *nonpublic* forum like the Jefferson Memorial, "the government may … favor its own expression").   The government has more flexibility to favor its own speech in "government speech" and "nonpublic forum" contexts, like permanent monuments, license plates, jails, and airports.  But *outside of those contexts*, reasonable jurists could conclude that *Solantic*, *Women Strike for Peace*, and other cases (ECF No. 153 at 6) stand for the proposition that the government may *not* prefer its own speech, unless that discrimination can satisfy strict scrutiny.

and defining its contours must be guided by standards that prevent content discrimination); *Bell v. City of Winter Park*, 745 F.3d 1318, 1324 (11th Cir. 2014) (confirming that "unrestrained discretion" doctrine extends beyond the context of permitting and prior restraints).  Likewise, reasonable jurists could conclude that the Hobbs Act does not require the Court to close its eyes to the FCC's orders that in fact impose such content-based exemptions.  Although the Court rejected this argument in a footnote, finding based on the Hobbs Act that the Court "lacks jurisdiction to consider [] a challenge" relating to the FCC's regulatory exemptions of preferred speech (Order at 31 n.7), at least one court has reached the opposite conclusion.  In *American Association of Political Consultants, Inc. v. Sessions*, the court held that "[i]f the plaintiffs obtain the relief they seek in this action [*i.e.*, invalidating Section 227(b)(1)(A)(iii)'s speech restriction], the exemptions set out in the FCC's orders will be rendered unnecessary, but they will not be enjoined, set aside, annulled, or suspended."  No. 5:16-CV-252-D, 2017 WL 1025808, at *2 (E.D.N.C. Mar. 15, 2017).  Thus, a reasonable jurist could find that TWC is entitled to challenge the application of this content-based *statutory restriction* to itself, as shaped by the regulatory exemptions, since TWC need not (and does not) seek to invalidate these agency orders.

Thus, the Court's Order presents multiple issues on which the Second Circuit could reasonably disagree.  And certification is particularly appropriate here because the First Amendment question "will have 'precedential value for a large number of cases.'"  *Flo & Eddie, Inc.*, 2015 WL 585641, at *2 (citation omitted)).  According to PACER, over 100 TCPA cases were filed in this Circuit within the last year.  This issue is likely to be relevant in many of them.  Notably, the only two other judges to have addressed similar First Amendment challenges to Section 227(b)(1)(A)(iii) both certified their decisions of interlocutory review.  *Brickman*, 2017 WL 1508719, at *3; Order, *Holt*, ECF No. 86 at 1.

## II.     THE COURT SHOULD STAY THESE CASES

A stay is warranted during the pendency of the Second Circuit's interlocutory review.  In *Brickman* and *Holt*, both Judges held that, if the Ninth Circuit grants interlocutory review, further proceedings will be stayed during the Ninth Circuit's review.   They found that certification, joined with such a stay, was appropriate because this approach would "advance the ultimate termination of the litigation" and "'may spare the parties of the burden of a trial'" and other unnecessary proceedings.  *Brickman*, 2017 WL 1508719, at *4 (citation omitted); *see also Holt*, ECF No. 86 at 1 (adopting the same reasoning).  Here, too, judicial economy would best be served by a stay during the pendency of the Second Circuit's review, because "[w]hether or not the Court's judgment on appeal is affirmed," granting a stay, "rather than proceeding with cumbersome class-wide discovery, a motion for certification, and ultimately a decision on damages, is very likely to save time and money for the litigants—whether by resolving the case outright" or clarifying important issues that could otherwise linger over these cases, complicating settlement.  *Flo & Eddie, Inc*, 2015 WL 585641, at *4.  Indeed, in light of similar considerations, courts of this Circuit commonly stay cases for which certification of interlocutory review is granted.   *See id.*; *Kinkead*, 2016 WL 9453808, at *3 (granting stay during pendency of interlocutory review since "it [will] be in all parties' interests—as well as in the public interest— to resolve this dispositive question before the parties and the Court expend additional resources on class certification and discovery").

As both Judges Henderson and Tigar recognized, a stay is independently warranted because there has not yet been a decision in the *ACA* appeal, which likely will have a significant impact on the landscape of TCPA litigation.  *See Brickman*, 2017 WL 1508719, at *5; Order, *Holt*, ECF No. 86 at 1-2 (adopting the same reasoning).  *ACA* was argued in October 2016 and is likely to be decided soon.   Summary judgment proceedings have made clear that complex

9

questions of the technical "capacity" of TWC's dialing systems are central issues in these cases, along with the identities of the "called part[ies]" whose "prior express consent" would be effective.  These exact issues are pending on appeal in *ACA*.

Plaintiffs have indicated that they intend to seek extraordinarily burdensome discovery on these issues, relating to *all* calls placed to *all* individuals from TWC's IVR architecture over more than four years, as well as evidence relating to prior express consent for those calls.  *See generally* Amended Class Action Complaint, *Mejia*, ECF No. 45 at 12; Amended Class Action Complaint, *Johnson*, ECF No. 7 at 7.  As TWC has previously explained in detail, producing this data would be extraordinarily expensive and time consuming, requiring many hours by multiple TWC employees and restoration of hundreds of millions of records from dozens of backup tapes. *See* Declaration of Andrew Peppercorn, *Mejia* (October 8, 2016), ECF No. 66 ¶¶ 3-9.  The same is true in *Johnson*.  Indeed, the *Mejia* Plaintiffs have admitted that class-wide discovery on the five dialing systems at issue will be "expensive, requiring not only extensive written discovery but also the deposition of corporate representatives, experts, call-center witnesses, and … third party discovery (some of them [the witnesses] in India), all of which must be done per calling system."  *See* Opposition to Motion for Summary Judgment, *Mejia*, ECF No. 139 at 8.  It is difficult to see how the parties can engage in cost-effective, proportionate discovery when the governing legal standards remain in doubt.  Moreover, TWC should not be forced to expend significant amounts of money to avoid application of a presumptively unconstitutional statute when the applicable legal standard is not even clearly established.

When TWC last raised the issue of a complete stay, this Court noted that it was "a somewhat close question."  Transcript of December 28, 2015 Hearing, *Mejia*, ECF No. 35 at 33; *see also* Transcript of May 16, 2016 Hearing, *Johnson*, ECF No. 48 at 14 (the Court

acknowledging that the *ACA* appeal provided "some reason to stay" the matter). The Court ultimately decided to stay discovery in these matters only in part, but expressly contemplated that TWC could bring "a renewed motion for a stay" in the event that "the D.C. Circuit has not ruled" by the time the parties completed discovery on Plaintiffs' individual claims. Transcript, *Mejia*, ECF No. 35 at 8. In light of the clear relevance of *ACA* and the significant doubts regarding the constitutionality of the pertinent TCPA provision, TWC respectfully submits that the time has now come to enter a complete stay pending a decision in *ACA* and any interlocutory review of the First Amendment issue by the Second Circuit. Indeed, that is precisely the approach that both *Brickman* and *Holt* endorsed, as have dozens[2] of other recent decisions that have stayed proceedings pending the resolution of *ACA*. *See Brickman*, 2017 WL 1508719, at

---

[2] *See, e.g., Flockhart v. Synchrony Bank*, No. 17-CV-4019-MWB, 2017 WL 3276266, at *3 (N.D. Iowa Aug. 1, 2017); *Rosales v. Heath*, No. 8:17-CV-87, 2017 WL 2533365, at *3 (D. Neb. June 9, 2017); *Ricketts v. Consumers Energy Co.*, No. 16-CV-13208, 2017 WL 2351731, at *3 (E.D. Mich. May 31, 2017); *Kennoy v. Synchrony Bank*, No. 3:16-CV-2034, 2017 WL 2215279, at *3 (M.D. Pa. May 19, 2017); *DiMarco v. Nationstar Mortg., LLC*, No. 16-CV-6588, 2017 WL 1855197, at *1 (W.D.N.Y. May 5, 2017); *Gage v. Cox Commc'ns, Inc.*, No. 2:16-CV-02708-KJD-GWF, 2017 WL 1536220, at *2 (D. Nev. Apr. 27, 2017); *Brickman v. Facebook, Inc.*, No. 16-CV-00751-TEH, 2017 WL 1508719, at *3 (N.D. Cal. Apr. 27, 2017); *Lilly v. Synchrony Fin.*, No. 2:16-CV-2687-JCM-VCF, 2017 WL 1370698, at *2 (D. Nev. Apr. 7, 2017); *Bowden v. Contract Callers, Inc.*, No. 16-CV-06171-MMC, 2017 WL 1732017, at *4 (N.D. Cal. Apr. 5, 2017); *Childs v. Time Warner Cable Enter.*, Ord. Granting Mot. to Stay, No. 5:15-cv-240 (W.D. Ky. Mar. 16, 2016); *Reynolds v. Geico Corp.*, No. 2:16-CV-01940-SU, 2017 WL 815238, at *5 (D. Or. Mar. 1, 2017); *Joseph v. Barclays Bank Delaware*, No. 1:16-CV-00029-AT-RGV, 2016 WL 8202737, at *3 (N.D. Ga. Dec. 12, 2016); *Williams v. Nationstar Mortg., LLC*, No. 6:16-CV-01357-TC, 2016 WL 6905382, at *3 (D. Or. Nov. 23, 2016); *Jones v. Credit Acceptance Corp.*, No. 15-13165, 2016 WL 7320919, *3 (E.D. Mich. Oct. 31, 2016), *report and recommendation adopted by* 2016 WL 7242141 (E.D. Mich. Dec. 15, 2016); *Rajput v. Synchrony Bank*, No. 3:15-CV-1595, 2016 WL 6433150, at *8 (M.D. Pa. Oct. 31, 2016); *Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 823 (D. Minn. 2016); *Coatney v. Synchrony Bank*, No. 6:16-CV-389-ORL-22TBS, 2016 WL 4506315, at *2 (M.D. Fla. Aug. 2, 2016); *Rose v. Wells Fargo Advisors, LLC*, No. 1:16-CV-562-CAP, 2016 WL 3369283, at *1 (N.D. Ga. June 14, 2016); *Rodriguez v. DFS Services, LLC*, No. 8:15-cv-2601-T-30TBM, 2016 WL 369052 (M.D. Fla. Feb. 1, 2016); *Abplanalp v. United Collection Bureau, Inc.*, No. 3:15-CV-203-RJC-DCK, 2016 WL 81498, at *8 (W.D.N.C. Jan. 7, 2016).

*5; Order, *Holt*, ECF No. 86 at 1 (adopting the same reasoning).[3]  And last week, in recognition

of the importance of the decision in *ACA*, the Ninth Circuit stayed its decision on the petitions

for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) in *Brickman* and *Holt*, pending the D.C.

Circuit's decision in *ACA*.  *See Brickman*, No. 17-80080 (9th Cir. Aug. 17, 2017), ECF No.

10549147; *Holt*, No. 17-80086, (9th Cir. Aug. 17, 2017), ECF No. 10549147.

## III.   EVEN IF THE COURT DOES NOT STAY THESE CASES PENDING THE SECOND CIRCUIT'S INTERLOCUTORY REVIEW AND A DECISION IN *ACA*, THE COURT SHOULD STAY *JOHNSON* PENDING RESOLUTION OF *MEJIA*

Even if the Court does not stay both *Mejia* and *Johnson* for the reasons discussed above,

it should stay (the later-filed) *Johnson* pending resolution of (the first-filed) *Mejia* under the first-

to-file rule.  Under that rule, absent competing considerations not present here, a first-filed action

should take priority over a second-filed action involving substantially similar parties and issues

to conserve judicial resources and avoid duplicative litigation.  *See, e.g.*, *800-Flowers, Inc. v.

Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131-32 (S.D.N.Y. 1994); *Ortiz v. Panera Bread

Co.*, No. 1:10CV1424, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011).  Where the first-to-file

rule applies, it supports a stay or dismissal of the later-filed action.  *Eternal Asia Supply Chain

Mgmt. (USA) Corp. v. EQD Corp.*, No. 12 Civ. 0058 (JPO), 2012 WL 6186504, at *4 (S.D.N.Y.

Dec. 12, 2012) (Oetken, J.).  This is especially true in the case of competing class actions.  *See,

e.g.*, *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011) ("If nationwide classes were

certified in both actions, each of the named plaintiffs would be included in the other's class.

This Court cannot allow a parallel action to proceed which involves putative absent class

members from an earlier-filed class action," which would be a waste of judicial resources).

---

[3] In addition, a stay would also permit the Second Circuit the opportunity to provide critical guidance on the characterization of the TWC IVR architecture at issue in the *King* matter.

Here, *Mejia* was filed before *Johnson*, and the relevant parties and class certification issues in both TCPA cases against TWC are substantially similar, warranting a stay of *Johnson*. First, the parties that matter for purposes of the first-to-file analysis—the defendant and the members of the proposed classes—substantially overlap. *Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2015 WL 224750, at *2 (N.D. Ga. Jan. 15, 2015) ("[I]n the context of class action lawsuits … it is the class, not the class representatives, that are relevant for purposes of the first-to-file rule … [a]nd courts routinely look to the similarities of the proposed classes even where the court has not ruled yet on the certification question.") (internal quotations and citations omitted; collecting cases); *see also Tate-Small v. Saks Inc.*, No. 12 CV 1008 (HB), 2012 WL 1957709, at *2-3 (S.D.N.Y. May 31, 2012).  The defendant (TWC) is the same in both actions, and the class definition in *Mejia* overlaps with the definition in *Johnson*, which means members of the putative class in the latter will be included in the former.   Amended Class Action Complaint, *Mejia*, ECF No. 45 at ¶ 62; Amended Class Action Complaint, *Johnson*, ECF No. 7 at ¶ 16.[4]

And second, while there are significant differences between the plaintiffs' *individual* claims, the proposed *class* claims in *Mejia* subsume those in *Johnson*.   *See* Amended Class Action Complaint, *Mejia*, ECF No. 45 at ¶¶ 19, 24-31, 42-48, 62; Amended Class Action Complaint, *Johnson*, ECF No. 7 ¶¶ 9-16.  Indeed, although the plaintiffs' proposed class in *Mejia* is broader than *Johnson*, the former *includes* people that TWC allegedly called on their cellular telephones with an ATDS where TWC was purportedly calling the wrong number, in alleged

---

[4] Although there is a difference in the period covered by the putative classes as currently defined, that does not militate against the application of the first-to-file rule.  *See, e.g.*, *Sandusky Wellness Ctr. v. DrFirst.com, Inc.*, No. 3:12 CV 2261, 2012 WL 6732636, at *2 (N.D. Ohio Dec. 28, 2012) (applying first-to-file rule and holding that, aside from a variation in time-period, the proposed classes in both actions encompass substantially the same individuals).

violation of the TCPA.  That is the same as the proposed class in *Johnson*.  Amended Class Action Complaint, *Mejia*, ECF No. 45 at ¶ 62; Amended Class Action Complaint, *Johnson*, ECF No. 7 at ¶ 16.  Thus, class discovery in *Mejia* will involve the same issues as class discovery in *Johnson*, and resolution of class certification in *Mejia* will effectively, if not literally, resolve the putative class's claims in *Johnson* (whether it be through denial of class certification, a class-wide settlement, or otherwise).

As such, allowing *Johnson* to proceed to class discovery would waste judicial resources and duplicate efforts, without any benefit.  *See Readick v. Avis Budget Group, Inc.*, No. 12 Civ. 3988(PGG), 2014 WL 1683799, at *4 (S.D.N.Y. Apr. 28, 2014) (granting stay where earlier-filed putative class action would "likely resolve many of the factual and legal issues in" the later-filed action, particularly where resolution at the certification stage of earlier-filed action will likely have preclusive effect on the issues and claims in the later-filed action); *Ace Property and Cas. Ins. Co. v. Specialty Logging, LLC*, No. 1:14-cv-00944-JMC, 2015 WL 1422181, at *4 (D.S.C. Mar. 27, 2015) (staying later-filed action as to avoid wasting judicial resources).  This is especially true given this Court has already appointed plaintiffs' counsel in *Mejia* as interim class counsel—for the same putative class members at issue in *Johnson*.  *See* Opinion and Order, *Mejia*, ECF No. 110.

Accordingly, even if this litigation proceeds notwithstanding TWC's request for a stay in both *Mejia* and *Johnson*, the Court should stay *Johnson* under the first-to-file rule or its inherent power to control its docket.  *See, e.g.*, *Readick*, 2014 WL 1683799, at *2 (staying later-filed putative class action where class certification issues in earlier-filed action will likely resolve issues in later-filed action).

**CONCLUSION**

For the foregoing reasons, the Court should enter an order certifying for interlocutory review pursuant to 28 U.S.C. § 1292(b) its Order denying TWC's motion for judgment on the pleadings, and stay these cases pending the Second Circuit's resolution of TWC's interlocutory appeal and the D.C. Circuit's resolution of *ACA*.  If this litigation proceeds pending the Second Circuit's resolution of TWC's interlocutory appeal and the D.C. Circuit's resolution of *ACA*, then the Court should stay (the later-filed) *Johnson* pending resolution of (the first-filed) *Mejia*.

Dated: August 22, 2017                    Respectfully Submitted,
      Washington, D.C.

LATHAM & WATKINS LLP

By  /s/ Andrew D. Prins

Matthew A. Brill (admitted *pro hac vice*)
Andrew D. Prins (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite #1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (212) 637-2201
matthew.brill@lw.com
andrew.prins@lw.com

*Attorneys for Defendant Time Warner Cable Inc.,*
*Mejia v. Time Warner Cable Inc.*

KABAT CHAPMAN & OZMER LLP

By  /s/ Shawna M. Miller[5]

Joseph W. Ozmer II
Ryan D. Watstein
Shawna M. Miller
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (470) 447-0600
Facsimile: (470) 447-0615
jozmer@kcozlaw.com
rwatstein@kcozlaw.com
smiller@kcozlaw.com

GARTNER + BLOOM P.C.
Kenneth A. Bloom
801 Second Avenue, 11th Floor
New York, NY 10017
Telephone: (212) 759-5800
Facsimile: (212) 759-5842
kbloom@gartnerbloom.com

---

[5] TWC uses electronic signatures with consent in accordance with Rule 8.5 of the Court's ECF Rules and Instructions.

16

*Attorneys for Defendant Time Warner Cable Inc.,*
*Johnson v. Time Warner Cable Inc.*