UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAQUEL S. MEJIA, LEONA HUNTER, and ANNE MARIE VILLA, on behalf of themselves and all others similarly situated,<br><br>                      Plaintiffs,<br><br>      -v-<br><br>TIME WARNER CABLE INC.,<br>                    Defendant. | 15-CV-6445 (JPO) |
| ALLAN JOHNSON,<br>                    Plaintiff,<br><br>      -v-<br><br>TIME WARNER CABLE INC.,<br>                    Defendant. | 15-CV-6518 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Time Warner Cable, Inc. ("Time Warner") is the sole defendant in two actions, separately filed by Raquel Mejia (No. 15 Civ. 6445, the "*Mejia* action")[1] and Allan Johnson (No. 15 Civ. 6518, the "*Johnson* action"), alleging a violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). Raising a First Amendment challenge to the TCPA, Time Warner previously moved for judgment on the pleadings in both cases. This Court denied those motions. *See Mejia v. Time Warner Cable Inc.*, No. 15 Civ. 6445, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017).

---

[1] An amended complaint removed Mejia and added as Plaintiffs Leona Hunter and Anne Marie Villa. (Dkt. No. 45.)

1

Time Warner now moves for an order certifying for interlocutory review this Court's order and a stay of both actions. (*Mejia* Dkt. No. 155; *Johnson* Dkt. No. 79.) For the reasons that follow, the Court denies certification of an interlocutory appeal but grants a stay.

## I.      Background

Familiarity with the facts of these cases, as set out in this Court's prior opinion, is presumed. *See Mejia*, 2017 WL 3278926, at *1–4. The Court briefly recounts the background information necessary to resolve the instant motions.

The TCPA restricts various privacy-invading practices related to telephone technology. In particular, the statute prohibits individuals from making calls

> using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . , unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

Both suits allege that Time Warner violated the TCPA by making unsolicited calls to consumers' telephones with an ATDS and/or a prerecorded voice. (*See Mejia* Dkt. No 15 at 2, 12–13; *Johnson* Dkt. No. 7 at 1, 3.)

In October 2016, Time Warner moved for judgment on the pleadings, challenging the constitutionality of the TCPA on First Amendment grounds. (*Mejia* Dkt. No. 82; *Johnson* Dkt. No. 52.) Time Warner argued that the TCPA's exception for "call[s] . . . made solely to collect a debt owed to or guaranteed by the United States," 47 U.S.C. § 227(b)(1)(A)(iii) (the "government-debt exception"), creates a content-based restriction that fails strict scrutiny. In its

Opinion and Order dated August 1, 2017, this Court agreed that § 227(b)(1)(A)(iii) is content-based but concluded that the statute survives strict scrutiny. *See Mejia*, 2017 WL 3278926, at *14–17.

Time Warner now moves for an order certifying for interlocutory review this Court's Opinion and Order, and, should the Court grant certification, an order staying both actions pending the Second Circuit's review. (*Mejia* Dkt. No. 155; *Johnson* Dkt. No. 79.) Time Warner also requests an order staying both actions pending the D.C. Circuit's resolution of its own TCPA case, *ACA International v. FCC*, No. 15-1211 (D.C. Cir.). (*Id.*) In the alternative, Time Warner moves for an order staying the *Johnson* action in favor of the *Mejia* action. (*Id.*)

## II.     Motion for a Certificate of Appealability

### A.     Legal Standard

Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if three conditions are met: (1) "such order involves a controlling question of law," (2) "there is substantial ground for difference of opinion" on that question of law, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

"The proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria [of § 1292(b)] are met." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529 (S.D.N.Y. 2014). And "even when the elements of section 1292(b) are satisfied, the district court retains 'unfettered discretion' to deny certification." *Garber v. Office of the Com'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (quoting *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 162–63 (E.D.N.Y. 1999)).

Despite the availability of certification under § 1292(b), "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). As a result, the Second Circuit has cautioned district courts to grant interlocutory certification sparingly. *See, e.g.*, *id.* ("[Interlocutory appeal] is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."). "Certification . . . is limited to 'extraordinary cases where appellate review might avoid protracted and expensive litigation,' and is not intended as a vehicle to provide early review of difficult rulings in hard cases." *In re Levine*, No. 94 Civ. 44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004) (citations omitted) (quoting *German v. Federal Home Loan Mortgage Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

### B.     Discussion

#### 1.     Time Warner's First Amendment Arguments

Time Warner's motions for judgment on the pleadings raised three First Amendment challenges to the TCPA. Time Warner argued that the TCPA triggers strict scrutiny because: (1) the government-debt exception is a content-based distinction, (2) the government-debt exception is a speaker-based distinction, and (3) the statute's delegation of exception-creating authority to the FCC makes the TCPA content-based. *See Mejia*, 2017 WL 3278926, at *14–15. (*See also Mejia* Dkt. No. 156 at 4–8; *Johnson* Dkt. No. 80 at 4–8.)

The Court's Opinion and Order rejected the second and third arguments, concluding that neither the TCPA's exception for government speakers nor its FCC authorization triggers strict scrutiny. *See Mejia*, 2017 WL 3278926, at *15.

In contrast, the Court agreed that the government-debt exception creates a content-based distinction necessitating strict scrutiny, but the Court concluded that § 227(b)(1)(A)(iii) survives strict scrutiny. *See Mejia*, 2017 WL 3278926, at *15. The Court will not rehash its Opinion and

Order, which substantively explained the Court's conclusions: (1) that the TCPA serves the compelling interest of "protect[ing] the privacy interests of residential telephone subscribers," *id.* at *16 (quoting S. Rep. No. 102-178, at 1 (1991)), and (2) that the "narrow [government-debt] exception, and the provision as a whole," are narrowly tailored "to further the interests that Congress sought to pursue with the TCPA," *id.* at *17.

### 2.      Section 1292(b) Factors

Time Warner satisfies the first and third § 1292(b) requirements. Time Warner convincingly argues that all three of its First Amendment arguments present "a controlling question of law" that, if resolved differently by the Court of Appeals, would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). As the Court previously observed, "invalidation of Section 227(b)(1)(A)(iii) would release [Time Warner] from liability." *Mejia*, 2017 WL 3278926, at *12.[2] If the TCPA violates the First Amendment for any of the three reasons Time Warner posits, then the *Mejia* and *Johnson* actions could not proceed against Time Warner.

The second § 1292(b) requirement is a much closer call. It is difficult to define precisely what qualifies as a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). The Second Circuit has explained that substantial grounds may exist where "the issues are difficult and of first impression," *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990), but it has also

---

[2]      The *Mejia* and *Johnson* Plaintiffs argue that invalidation of § 227(b)(1)(A)(iii) would not terminate their actions because the appropriate judicial remedy would sever the government-debt exception—subjecting all messages to the same prohibition, and leaving Time Warner liable. (*See Mejia* Dkt. No. 166 at 2–4; *Johnson* Dkt. No. 86 at 2–4.) However, at this early stage of litigation and without the benefit of full and focused briefing, the Court declines to prematurely venture a hypothesis about the severability of the challenged provision.

cautioned that "the mere presence of a disputed issue that is a question of first impression,

standing alone, is insufficient," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). The substantial-

grounds standard is necessarily cloudy at the edges because "[i]t is the duty of the district judge

. . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding

whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Id.*

(alterations in original) (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa.

1983)). Ultimately, "only 'exceptional circumstances . . . justify a departure from the basic

policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer*,

921 F.2d at 25 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

The government-debt exception. As to Time Warner's first and second First Amendment

challenges to the TCPA[3]—both based on the government-debt exception—the Court concludes

that "substantial ground for difference of opinion" does not exist as to § 227(b)(1)(A)(iii)'s

ability to survive strict scrutiny.

The cases Time Warner proffers as evidence of judicial disagreement are lacking. Time

Warner has identified cases in which other courts have found a privacy interest insufficiently

compelling, or have found a statute serving such an interest insufficiently tailored. (*See Mejia*

Dkt. No. 156 at 5–6; *Johnson* Dkt. No. 80 at 5–6.) But the parallels between the restrictions at

issue in Time Warner's cases and the TCPA's government-debt exception cannot be drawn at a

---

[3] The Court treats Time Warner's "content-based" and "speaker-based" objections to the government-debt exception together. The Opinion and Order concluded that "the absence of TCPA liability for government speakers" does not trigger strict scrutiny. *Mejia*, 2017 WL 3278926, at *15. However, even if other jurists would disagree and apply strict scrutiny, that difference of opinion would be of no consequence—i.e., it does not present "a controlling question of law" that would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b)—if the restriction *passes* strict scrutiny. The Court concludes that it does, and, as explained below, concludes that there are no substantial grounds for disagreement as to the Court's application of strict scrutiny to the government-debt exception.

level of granularity that would indicate a "*substantial* ground for difference of opinion" among jurists.[4] 28 U.S.C. § 1292(b) (emphasis added). Indeed, of the three other courts that have considered whether the TCPA (in its current form) passes strict scrutiny, all three have concluded that it does. *See Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1034 (N.D. Cal. 2017); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1046 (N.D. Cal. 2017); *Greenley v. Laborers' Int'l Union of N. Am.*, No. 16 Civ. 3773, 2017 WL 4180159, at \*13–14 (D. Minn. Sept. 19, 2017).[5]

Additionally, strict scrutiny is not "strict in theory but fatal in fact." *Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1666 (2015) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995)). The Court is unwilling to adopt a *per se* rule that would require certification for interlocutory appeal of any order in which a court applies strict scrutiny analysis. Such a mechanical certification would undermine the purpose of § 1292(b) and the final-judgment rule, which "preserves the proper balance between trial and appellate courts, minimizes

---

[4]     The Opinion and Order's strict scrutiny analysis focused on whether an exemption for *federal* government-debt collection satisfies the First Amendment. In its motion for certification, Time Warner raises a new argument challenging the constitutionality of the exemption with respect to government entities that do not enjoy sovereign immunity, such as county and municipal governments. (*See Mejia* Dkt. No. 156 at 7; *Johnson* Dkt. No. 80 at 7.) This argument was not presented to the Court in Time Warner's motions for judgment on the pleadings (*see Mejia* 83 at 8–10; *Johnson* Dkt. No. 53 at 12–14), and thus would be waived on appeal. As a result, Time Warner's local-government argument is irrelevant to the instant motion for a certificate of appealability.

[5]     A fourth case, *Mey v. Venture Data, LLC*, concluded that the TCPA is facially content-neutral. 245 F. Supp. 3d 771, 792–93 (N.D. W. Va. 2017). While *Mey* evinces disagreement among courts over the appropriate level of scrutiny to apply to the TCPA, that is not the kind of disagreement that could "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If *Mey* is correct, then this Court was unduly cautious in applying strict scrutiny. But the statute survives—and Time Warner remains potentially liable—either way.

the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017).

The FCC Authorization. Time Warner's third First Amendment objection to the TCPA—namely, its authorization to the FCC to create additional exemptions, *see* 47 U.S.C. § 227(b)(2)(C)—is more easily resolved. The Court reiterates that "[t]he mere fact that the FCC *could* exercise this authority in a manner that runs afoul of the First Amendment does not imply that the grant of authority is itself unconstitutional." *Mejia*, 2017 WL 3278926, at *15. The other courts to consider this question have agreed. *See Brickman*, 230 F. Supp. 3d at 1045; *Holt*, 240 F. Supp. 3d at 1032–33; *Greenley*, 2017 WL 4180159, at *13.

Accordingly, the Court denies Time Warner's motion for a certificate of appealability and denies as moot Time Warner's request for a stay pending appeal.

## III. Motion To Stay

Separately from its motion under § 1292(b), Time Warner asks this Court to stay both the *Mejia* and *Johnson* actions pending the D.C. Circuit's disposition of *ACA International v. FCC*, No. 15-1211 (D.C. Cir.). At issue in *ACA International*, among other things, is the FCC's final order interpreting the meaning of "automatic telephone dialing system" under the TCPA. Oral argument in that case was held in October 2016.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (alternation in original) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)) (internal quotation marks omitted). Although this Court previously denied Time Warner's motion for a stay pending a decision in *ACA International*, the Court ordered a staged discovery schedule that

limited the scope of initial discovery to the claims of the named plaintiffs. (*See Mejia* Dkt. No.

35 at 33:1–34:11; *Johnson* Dkt. No. 48 at 13:18–14:11.)

That stage of discovery has now ended, and the equities have changed. On one hand, the

risk of prejudice to Time Warner is higher. Both the *Mejia* and *Johnson* actions purport to

represent a class of individuals who received calls placed by an ATDS. Without a stay, broad

class-wide discovery may proceed based on an interpretation of "ATDS" that might be modified

or narrowed as a result of *ACA International*.[6] On the other hand, given that *ACA International*

will likely be decided soon, any prejudice to Plaintiffs from a stay will be minimal and short-

lived. In sum, because the disposition of *ACA International* could significantly alter the

regulatory landscape—and alter it soon—the Court concludes that judicial economy counsels in

favor of staying both the *Mejia* and *Johnson* actions pending resolution of *ACA International*.[7]

## IV.    Conclusion

For the foregoing reasons, Time Warner's motion for an order certifying its Opinion and

Order for interlocutory review is DENIED. Time Warner's motion for an order staying the

*Mejia* and *Johnson* actions pending the D.C. Circuit's resolution of *ACA International v. FCC*,

No. 15-1211 (D.C. Cir.) is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 155 in 15-CV-6645

and the motion at Docket Number 79 in 15-CV-6518.

---

[6]    The D.C. Circuit's decision will not directly bind this Court; it *will*, however, bind
the FCC, *see* 28 U.S.C. § 2342(1), whose final order defining an ATDS supplies a basis for Time
Warner's liability.

[7]    Because both the *Mejia* and *Johnson* actions are stayed pending a decision in *ACA
International*, the Court denies as moot—without prejudice to renewal—Time Warner's separate
motion to stay *Johnson* in favor of *Mejia*.

Time Warner shall promptly notify this Court in writing, via ECF, of the D.C. Circuit's decision in *ACA International*. Within 21 days of such notice, the parties are directed to file a letter with the Court proposing a timeline for further proceedings. Time Warner may renew its motion for an order staying the *Johnson* action at that time.

SO ORDERED.

Dated: November 17, 2017
    New York, New York

_____
J. PAUL OETKEN
United States District Judge