UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEONA HUNTER and ANNE MARIE VILLA, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>  v.<br><br>TIME WARNER CABLE INC.,<br><br>         Defendant. | Case No. 1:15-cv-06445-JPO |

## DEFENDANT TIME WARNER CABLE INC.'S MOTION TO STRIKE THE DECLARATIONS OF ANYA VERKHOVSKAYA AND COLIN WEIR

## **TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| ARGUMENT | | 3 |
| I. | NEW EXPERT TESTIMONY SUPPORTING A NEW METHODOLOGY IS NOT PROPER REBUTTAL TESTIMONY AND MUST BE STRICKEN | 5 |
| II. | NEW EXPERT TESTIMONY THAT BOLSTERS THE LEXISNEXIS DATA IS NOT PROPER REBUTTAL TESTIMONY AND MUST BE STRICKEN | 7 |
| III. | MR. WEIR'S OTHER ATTEMPTS TO BOLSTER HIS ORIGINAL OPINIONS ARE NOT PROPER REBUTTAL TESTIMONY SO MUST ALSO BE STRICKEN | 8 |
| CONCLUSION | | 9 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-cv-230, 2013 WL 6909953 (D. Vt. Dec. 13, 2013) ...................................................... 4

*Bowman v. Int'l Bus. Mach. Corp.*,
  No. 1:11-CV-0593-RLY-TAB, 2012 WL 6596933 (S.D. Ind. Dec. 18, 2012),
  *objections overruled*, 2013 WL 1857192 (S.D. Ind. May 2, 2013) .......................................... 5

*Chen v. New Trend Apparel, Inc.*,
  8 F. Supp. 3d 406 (S.D.N.Y. 2014) ............................................................................................ 4

*Ebbert v. Nassau Cnty.*,
  No. CV 05-5445(FB)(AKT), 2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ........................... 6

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) ................................. 6, 7

*Hunt v. CNH Am. LLC*,
  857 F. Supp. 2d 320 (W.D.N.Y. 2012) ....................................................................................... 9

*Lava Trading, Inc. v. Hartford Fire Ins. Co.*,
  No. 03 CIV. 7037 (PKC), 2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005) ................................. 3

*Lidle v. Cirrus Design Corp.*,
  No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) .................. 3, 6, 8

*Lujan v. Cabana Mgmt., Inc.*,
  284 F.R.D. 50 (E.D.N.Y. 2012) .................................................................................................. 3

*Mfon v. Cnty. of Dutchess*,
  No. 14-CV-6922 (KMK), 2017 WL 946303 (S.D.N.Y. Mar. 9, 2017) ..................................... 9

*Point Prods. A.G. v. Sony Music Entm't, Inc.*,
  No. 93 Civ. 4001 (NRB), 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004) .................................... 5

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
  No. 05 Civ. 09546, 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007) ........................................... 8

*Timber Pines Plaza, LLC v. Kinsale Ins. Co.*,
  192 F. Supp. 3d 1287 (M.D. Fla. 2016) .................................................................................... 8

*Tomeo v. CitiGroup, Inc.*,
  No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) .................................................. 5

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) ...............................................................................6

## RULES

Fed. R. Civ. P. 26(a)(2)..................................................................................................................3

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................................9

Fed. R. Civ. P. 26(a)(2)(B)(i).........................................................................................................3

Fed. R. Civ. P. 26(a)(2)(B)(vi).......................................................................................................4

Fed. R. Civ. P. 26(a)(2)(D) ............................................................................................................3

Fed. R. Civ. P. 26(a)(2)(D)(ii) .......................................................................................................4

Fed. R. Civ. P. 37(c)(1)...............................................................................................................3, 9

## INTRODUCTION

Plaintiffs filed their class certification motion on November 30, 2018, relying on a methodology for identifying class members and determining both liability and damages that utilized reverse-lookup information to determine wrong number calls. ECF No. 211 at 18-20. In support of that motion, Plaintiffs asked their expert witness, Colin Weir, "to examine Defendant's call detail records … and *to identify wrong number calls placed from th[e] [IVR] platform*." Weir Decl., ECF No. 213, ¶ 2 (emphasis added). Mr. Weir claimed that Plaintiffs could "identify wrong number calls" by comparing TWC's outbound calling data against reverse-lookup data reported by LexisNexis. *Id.* ¶ 7. If the individual that LexisNexis associated with a specific telephone number did not match the name of the TWC customer, Mr. Weir considered it a "mismatch" (*i.e.*, a wrong number) and claimed that TWC was liable for damages. *Id.* ¶¶ 18-24; *see also id.* ¶ 27 ████████████████████████████████████████ Plaintiffs also offered an expert declaration from Randall Snyder, who rubber stamped Mr. Weir's methodology, opining that "a mismatch between names in TWC's account records and identification information derived using this method[] is definitive evidence that TWC did in fact make an outbound call using a prerecorded voice to a wrong number." Snyder Decl., ECF No. 214, ¶ 21.

TWC invested substantial time and resources analyzing and evaluating Plaintiffs' methodology, and demonstrated that it is inaccurate and unreliable, with an error rate of at least 86%. *See* Taylor Report, ECF No. 226, at 8-23. Plaintiffs then made a huge pivot in their reply brief, proposing a new methodology and arguing that it is sufficient for them merely to give notice to individuals identified by LexisNexis (and perhaps other services), after which those individuals would identify themselves as class members based on self-certifying affidavits. *See* Plaintiffs' Reply In Support of Class Cert., ECF No. 262, at 25-29. Plaintiffs also propose for the first time in their reply that those self-identified class members could then be verified by cross-referencing

1

them in an ill-defined process potentially involving a TransUnion TLOxp or CNAM database, as well as subpoenas to various wireless carriers. *Id.* at 25-29.

In support of their reply brief, Plaintiffs have submitted an expert report from a new, previously undisclosed expert, Anya Verkhovskaya, as well as an additional report from their previously disclosed expert, Colin Weir. In broad strokes, Ms. Verkhovskaya spends most of her declaration supporting Plaintiffs' entirely new "notice" methodology. *See, e.g.*, Verkhovskaya Decl., ECF No. 265, ¶ 48 (opining that "it would be possible to ask that potential class members provide sworn affidavits" that they received wrong number calls, and "[a]ll of this information can then be checked against information … from reverse append sources (and subpoena sources)"). To a lesser extent, Ms. Verkhovskaya also seeks to bolster Plaintiffs' previous reliance on LexisNexis. *See, e.g., id.* ¶ 22 (claiming that LexisNexis data is 86-97% accurate). Mr. Weir's second expert report takes largely the inverse approach, mostly attempting to bolster his previous reliance on LexisNexis while also purporting to support Plaintiffs' new notice methodology. *See, e.g.*, Weir Second Decl., ECF No. 264, ¶ 6 (bolstering his opinion regarding the LexisNexis data with citations to new LexisNexis materials and new information contained in the Verkhovskaya declaration); *id.* ¶ 9 (claiming it is "possible" to use LexisNexis to effectuate notice). Mr. Weir also attempts to rehabilitate portions of his earlier expert report by offering new affirmative opinions and evidence that he attempts to characterize as rebuttal. *See, e.g., id.* ¶¶ 57-59 (offering a purported error rate to substantiate his original methodology under the guise of rebutting TWC's expert Robert Fuite).

Both of these "reply" expert reports are improper because they are untimely; indeed, they come three months too late. The Court ordered Plaintiffs to disclose their expert testimony by November 30, 2018. Even if rebuttal reports were allowed under the scheduling order—and they

are not—this new testimony, through which Plaintiffs both offer a brand new methodology and attempt to bolster their old one with new information, is not properly considered "rebuttal." Because Plaintiffs did not disclose them by the Court-ordered deadline, Ms. Verkhovskaya's expert declaration and Mr. Weir's second expert declaration should be stricken.

**ARGUMENT**

Parties must disclose the identities and written reports of their testifying experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).  The purpose of the rule and corresponding scheduling order is to enable the parties to conduct orderly discovery and briefing in a way that minimizes both unfair surprise and the burden and inefficiency that arise from unstructured and ad hoc disclosures.  *See, e.g.*, *Lidle v. Cirrus Design Corp.*, No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009) ("The interest served by requiring the disclosure of expert opinions is self evident.  It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross examination. … When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified."); *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, No. 03 CIV. 7037 (PKC), 2005 WL 4684238, at *7-9 (S.D.N.Y. Apr. 11, 2005).  The Federal Rules require the timely disclosure of a "*complete statement* of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added).  Failure to adhere to the expert disclosure deadlines warrants exclusion of the untimely disclosed expert reports.  *See, e.g.*, *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 77 (E.D.N.Y. 2012) ("In order to prevent the unfair 'sandbagging' of adverse parties, Rule 37(c)(1) prohibits the use of expert opinions that were not timely disclosed under Rule 26(a)(2).").

Here, the Court entered a class certification scheduling order on November 13, 2018, requiring that "Plaintiffs' expert disclosures and reports pursuant to Fed. R. Civ. P. 26(a)(2),

3

relating to all class certification issues, shall be served on or before: November 30, 2018," the same date that Plaintiffs' motion for class certification was due. Order, ECF No. 207, at 1. Ms. Verkhovskaya's first and only expert report, and Mr. Weir's second expert report, were not disclosed by November 30, 2018. In fact, Plaintiffs did not disclose them until three months later, on February 27, 2019. Thus, there can be no genuine dispute that these reports were untimely under the scheduling order.

To the extent that Plaintiffs seek to avoid exclusion of their untimely reports by claiming they are "rebuttal" reports, that characterization is not accurate. Even apart from the fact that the schedule ordered by the Court does not authorize Plaintiffs to submit any reports that were not disclosed by November 30, 2018,[1] rebuttal reports are those "intended solely to contradict or rebut evidence on the same subject matter identified by another party['s]" expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, Plaintiffs' new expert reports attempt to do three things, none of which is proper rebuttal. First, Ms. Verkhovskaya and, to a lesser extent, Mr. Weir attempt to support Plaintiffs' *new* notice methodology. Second, Mr. Weir and, to a lesser extent, Ms. Verkhovskaya attempt to bolster Mr. Weir's original reliance on LexisNexis. Third, Mr. Weir attempts to rehabilitate his own prior failed analysis. None of these categories of testimony is appropriately considered rebuttal testimony, and the reports therefore should be excluded.[2] *See Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2013 WL 6909953, at *8 (D. Vt. Dec. 13,

---

[1] Plaintiffs never sought leave to modify the governing scheduling order for expert disclosures.

[2] Ms. Verkhovskaya also fails to disclose the compensation she has received from Plaintiffs in this case, as required under the rules. Fed. R. Civ. P. 26(a)(2)(B)(vi). That failure provides another reason why her untimely report should be excluded. *See, e.g., Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 436 (S.D.N.Y. 2014) (refusing to consider an expert report that, among other deficiencies, was three months late and failed to disclose the expert's compensation).

2013) (excluding a "rebuttal" report that "fundamentally change[s] a key aspect of [an earlier] opinion").

I.   **NEW EXPERT TESTIMONY SUPPORTING A NEW METHODOLOGY IS NOT PROPER REBUTTAL TESTIMONY AND MUST BE STRICKEN**

Plaintiffs timely served the expert report of Randall Snyder and the initial expert report of Colin Weir on November 30, 2018, in which they described their methodology to identify class members and determine liability and damages. Based on those disclosures, TWC deposed Mr. Weir and Mr. Snyder, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. TWC also engaged several of its own experts to examine and evaluate Plaintiffs' methodology and offer opinions on its accuracy and reliability, and dedicated hundreds of hours of time to research the issues and facts that Plaintiffs cited in support of their methodology.

Now that TWC has shown in its class certification opposition brief (ECF No. 224 at 11-27) that Plaintiffs' supposedly "definitive" methodology fails to identify wrong number calls accurately, Plaintiffs are attempting a unilateral expert disclosure do-over. But Plaintiffs' new attempt is not proper rebuttal. *See, e.g.*, *Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *7 (N.D. Ill. Sept. 27, 2018) ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party. … Reply reports cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions."). Plaintiffs cannot simply conjure up a new methodology relying on new evidence and new expert declarations on reply. *See, e.g.*, *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93 Civ. 4001 (NRB), 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) ("To accept the contention that the new affidavits merely support an initial position when they in fact expound a wholly new and complex approach designed to fill a significant and logical gap in the first report would eviscerate the purpose of the expert disclosure rules."); *Bowman v. Int'l Bus. Mach. Corp.*, No.

5

1:11-CV-0593-RLY-TAB, 2012 WL 6596933, at *1, *5 (S.D. Ind. Dec. 18, 2012), objections overruled, 2013 WL 1857192 (S.D. Ind. May 2, 2013) (granting motion to exclude reply expert reports submitted in support of class certification "after Defendants' opposition to class certification raised serious concerns with Plaintiffs' experts' methodology for identifying class members and calculating damages" because the "reports improperly provide[d] additional support and at times completely change[d] their methodology"); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) (refusing to consider results of a new expert report served with a reply in support of class certification, where that report contained "several substantive changes to the design of the original survey, and the redesigned survey generated a new data set analyzed by [the expert]"); *Tomeo*, 2018 WL 4627386, at *7.

Here, Plaintiffs' untimely disclosures are highly prejudicial to TWC. Indeed, they constitute exactly the type of unfair surprise the rules are intended to prevent, and deprive TWC of the opportunity to test Plaintiffs' new methodology by deposing their experts about it and responding in regular order. *See Lidle*, 2009 WL 4907201, at *5 ("[D]isclosure of expert opinions" is required "to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross examination."); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 1351040, at *9 (N.D. Cal. Apr. 4, 2014) ("By presenting this analysis for the first time in [Plaintiff's expert's] reply, Plaintiffs have deprived Defendants of the opportunity to respond."); *Ebbert v. Nassau County*, No. CV 05-5445(FB)(AKT), 2008 WL 4443238, at *13-14 (E.D.N.Y. Sept. 26, 2008) (excluding a so-called rebuttal report because it included "new tables ... , methodologies ... , and theories" and prejudiced the opposing party insofar as their expert "did not have an opportunity to respond"). Plaintiffs forced TWC to invest significant amounts of time and resources taking discovery of and rebutting Plaintiffs' initial methodology. Now that TWC has

6

debunked it, Plaintiffs should not be permitted belatedly to disclose an entirely new methodology with no opportunity for TWC to test that methodology or submit expert testimony to rebut it. Nor would it be reasonable to extend the existing schedule to enable TWC to conduct additional depositions and submit additional pleadings, as doing so would impose substantial, unwarranted burdens on TWC. Plaintiffs had every opportunity to support their proposed class certification methodology based on the schedule adopted by the Court; that TWC pointed out the fatal flaws in their methodology does not justify allowing a complete do-over during the reply round.

## II. NEW EXPERT TESTIMONY THAT BOLSTERS THE LEXISNEXIS DATA IS NOT PROPER REBUTTAL TESTIMONY AND MUST BE STRICKEN

Mr. Weir and, to a lesser extent, Ms. Verkhovskaya, also attempt to buttress the accuracy of the LexisNexis data on which Mr. Weir originally relied. They do so by citing to affirmative evidence that should have been disclosed in Mr. Weir's November 30, 2018 report. *See, e.g.*, Verkhovaskaya Decl. ¶ 22 (claiming without support or citation that LexisNexis data is between 86-97% accurate); *id.* ¶¶ 23, 27, 30; Weir Second Decl. ¶¶ 6, 21-24 (citing to new LexisNexis marketing materials and new information contained in the Verkhovskaya declaration); *id.* ¶¶ 26-28 (citing to new LexisNexis marketing materials); *id.* ¶¶ 32-34 (citing to new information contained in the Verkhovskaya declaration). Mr. Weir also rehashes many of the same arguments he made in his initial declaration regarding the accuracy of LexisNexis data. *See, e.g.*, Weir Second Decl. at 2-11, 20-24.

None of that information is proper rebuttal testimony because all of it was available to Plaintiffs as of November 30, 2018, and should have been disclosed in their initial reports. *In re High-Tech*, 2014 WL 1351040, at *12 ("Plaintiffs will not be allowed to 'sandbag' Defendants with new analysis that should have been included at the very least in [Plaintiff's expert's] opening merits report."); *see also Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 Civ. 09546, 2007 WL

7

4157163, at *4 (S.D.N.Y. Nov. 16, 2007) (supplemental disclosures are only appropriate where the expert "subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete").  Plaintiffs are not entitled to redo their initial flawed expert reports by offering untimely new arguments and information to bolster the LexisNexis data they relied on in those reports.  *See Timber Pines Plaza, LLC v. Kinsale Ins. Co.*, 192 F. Supp. 3d 1287, 1291 (M.D. Fla. 2016) (excluding "rebuttal" report from previously undisclosed expert witness that "at best … bolster[ed] the opinions of the Plaintiff's initial expert witness … and at worst constitute[d] an attempt to obtain a do-over of [the expert witness]'s initial report"); *Lidle*, 2009 WL 4907201, at *4 (excluding a "reply expert report" because plaintiffs' expert "offered new reasons for his conclusions" and performed "testing after defendants submitted their reports").

### III.    MR. WEIR'S OTHER ATTEMPTS TO BOLSTER HIS ORIGINAL OPINIONS ARE NOT PROPER REBUTTAL TESTIMONY SO MUST ALSO BE STRICKEN

The remainder of Mr. Weir's Second Declaration largely consists of new affirmative assertions couched as rebuttal.  *See, e.g.*, Weir Second Decl. ¶¶ 57-59 (offering a purported error rate to substantiate his original methodology under the guise of rebutting TWC's expert Robert Fuite); *id.* ¶¶ 68-69 (proposing a new methodology for identifying mobile phone subscribers via carrier subpoenas under the guise of rebutting TWC's expert Ken Sponsler); *id.* ¶¶ 6, 17-18 (offering new evidence and analysis in support of the accuracy of LexisNexis data under the guise of rebutting TWC's experts).  Although Mr. Weir cites to the reports of TWC's experts in his lead-ins, what he is really offering is new information to support parts of his original opinions. *See Timber Pines Plaza, LLC*, 192 F. Supp. 3d at 1291 ("[A] plaintiff may not seize upon language used in a defendant's expert report as a chance to re-do their opening expert report.  This is particularly true where the expert evidence being offered on rebuttal is evidence that supports an

8

element of the plaintiff's prima facie case." (internal citations omitted)).  An expert may not use a rebuttal report as a way to expand on the scope of information provided in his or her earlier affirmative report.  S*ee, e.g.*, *Mfon v. County of Dutchess*, No. 14-CV-6922 (KMK), 2017 WL 946303, at *5 (S.D.N.Y. Mar. 9, 2017) (granting motion to exclude an expert's second report because it "goes well beyond the information contained in" that expert's first report); *Hunt v. CNH Am. LLC*, 857 F. Supp. 2d 320, 339 (W.D.N.Y. 2012) ("To the extent that [the expert's second report] contains new information, that exceeds the scope of [his first] written report and deposition testimony, as opposed to merely restating [his] earlier opinions, the Court agrees that it violates FRCP 26(a)(2)(B), and is subject to exclusion pursuant to FRCP 37(c)(1).").

## CONCLUSION

For the foregoing reasons, Colin Weir's and Anya Verkhovskaya's expert reports, dated February 27, 2019, should be stricken in their entirety.

| | |
|---|---|
| Dated: March 13, 2019 | By: /s Andrew D. Prins<br>    Andrew D. Prins |

                                            Matthew A. Brill (Admitted *Pro Hac Vice*)
                                            Andrew D. Prins (Admitted *Pro Hac Vice*)
                                            Nicholas L. Schlossman (Admitted *Pro Hac Vice*)
                                            LATHAM & WATKINS LLP
                                            555 Eleventh Street, NW, Suite 1000
                                            Washington, DC 20004
                                            Phone: (202)-637-2200
                                            Fax: (202)-637-2201
                                            matthew.brill@lw.com
                                            andrew.prins@lw.com
                                            nicholas.schlossman@lw.com

                                            *Attorneys for Defendant Time Warner Cable Inc.*